COMMONWEALTH vs. ANTONIO ANGIVONI.

Middlesex. November 3, 1980. — February 24, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Search and Seizure,* Consent to blood test. *Constitutional Law,* Search
and seizure, Consent to blood test.

On a motion to suppress the results of tests on blood samples taken from a
defendant at a hospital in which he was being treated for injuries sus-
tained in an automobile accident, the judge was warranted in finding
that the Commonwealth had failed to meet its burden of proving the
voluntariness of the defendant's consent to the blood extraction proce-
dure where there was evidence that the Registry of Motor Vehicles in-
spector, who had obtained the defendant's consent, had failed to in-
form the defendant of a fatality in the accident or of his right to refuse
the taking of blood samples, that a uniformed police officer was pres-
ent, and that the defendant's understanding and ability to reason re-
flectively may have been impaired by intoxication or as a result of his
injuries and attendant emotional trauma. [32-35]


COMPLAINTS received and sworn to in the Fourth Eastern
Middlesex Division of the District Court Department on
August 31 and September 28, 1979.

Upon appeal to the Lowell Division of the District Court
Department, a motion to suppress evidence was heard by
*Chernoff,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the
Commonwealth.

*Alfred Paul Farese* for the defendant.

LIACOS, J. This is an interlocutory appeal by the Com-
monwealth pursuant to Mass. R. Crim. P. 15 (a) (2), 378
Mass. 882 (effective July 1, 1979), from the decision of a

District Court judge. The judge allowed the defendant's motion to suppress the results of tests performed on blood samples taken from the defendant.[1] After an evidentiary hearing, the judge ruled that the defendant did not voluntarily consent to the blood extraction procedure, which, in the absence of such consent, was unlawful. We hold that there was no error.

The judge made the following findings of fact:

"At about 11:30 AM on July 5, 1979 Defendant was the driver of a motor vehicle which was involved in a two car accident in Woburn where a passenger of the other vehicle was killed. Defendant was taken by ambulance from the scene to the emergency room of the Winchester Hospital while the occupants of the other vehicle were taken to another hospital. At about 1 PM Registry Inspector Giffen who knew of the accident and the fatality, but not the details, arrived at the emergency room with a uniformed police officer to conduct an accident investigation. Upon his arrival Inspector Giffen found Defendant undergoing treatment while on a table in the emergency room. He learned from the doctor that Defendant had a dislocated hip and that immediate surgery was indicated. He also observed that defendant had a facial injury in the area of the mouth as he saw a scar [*sic*], swelling, and noted that Defendant had difficulty talking. The medical record indicated two missing teeth, two others loose, and a laceration of the lower lip requiring sutures. Inspector Giffen, who was in civilian attire, identified himself to Defendant and proceeded to ask him questions from a standard investigation form. Although it was difficult to hear Defendant because of his

---

[1] The defendant was involved in an automobile accident which caused one fatality. As a result he was charged with negligently operating an automobile so as to endanger the public safety, operating an automobile while under the influence of intoxicating liquor, and homicide by motor vehicle. The defendant was found guilty and sentenced on all charges by a judge in the Fourth District Court of Eastern Middlesex. He appealed to the Lowell District Court six-person jury session. The interlocutory appeal arises from the decision of the judge in that session. The appeal was transferred to this court by our own motion.

swollen mouth, the inspector was able to elicit answers to the following questions: 'where were you going;' 'where were you coming from;' and 'had you been drinking.' After responding 'no' to the third question Defendant was asked if he would let them take blood for an alcohol test and he responded 'yes.' The inspector then asked where the other car came from and Defendant replied 'I don't know, I am incoherent.' At this point Inspector Giffen decided to suspend or terminate the interview. At no time was Defendant told of the fatality, advised that he need not consent to a blood test, or advised that the results of the test could be used against him. The hospital record contains an early entry indicating: 'Exam: Healthy young man — alert, rational, cooperative.' It appears from the record that Defendant first received medication at 2:25 PM in the form of a preoperative spinal anesthesia."

The judge then concluded, in part:

"The Commonwealth has failed to meet its burden of proving that defendant knowingly and voluntarily consented to the blood extraction procedure. On the evidence presented at the hearing, consent is a sufficiently close issue that the allocation of the burden is determinative of the issue."

1. The taking of a blood sample constitutes a "search and seizure" within the meaning of the Fourth Amendment. *Schmerber* v. *California*, 384 U.S. 757, 767 (1966).[2] *Schmerber* points out that the taking of a blood sample may be nonconsensual provided there is probable cause and a search warrant, or exigent circumstance justifying the lack of a warrant. Alternatively, consent may be a basis for the taking of a blood sample. "When the Commonwealth relies

---

[2] The judge found that the defendant was not under arrest and also there was no probable cause to believe that he was under the influence of intoxicating beverages. Consequently, he ruled that, absent an arrest, G. L. c. 90, § 24 (1) (e), was inapplicable; he ruled further that, absent probable cause, the taking of blood could not be justified under the "exigent circumstance" theory discussed in *Schmerber* v. *California*, 384 U.S. 757 (1966). Neither party contests these findings and rulings, and they are not in issue on this appeal.

on consent as the basis for a warrantless search, it must demonstrate 'consent unfettered by coercion, express or implied, . . . [which is] something more than mere "acquiescence to a claim of lawful authority"' (citation omitted). *Commonwealth* v. *Walker,* 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). See *Bumper* v. *North Carolina,* 391 U.S. 543, 548-549 (1968); *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974). Voluntariness of consent 'is a question of fact to be determined in the circumstances of each case . . . .' *Commonwealth* v. *Aguiar,* 370 Mass. 490, 496 (1976)." *Commonwealth* v. *Cantalupo,* 380 Mass. 173, 176 (1980), quoting from *Commonwealth* v. *Harmond,* 376 Mass. 557, 561 (1978).

2. We apply the standard of review in this case as it has been recently stated: "[T]here is a presumption against waiver of constitutional rights, and, with regard to the attitude owed by the reviewing court to the trial judge who rules on a motion to suppress, that it is for that judge to resolve questions of credibility; that his subsidiary findings are to be respected if supported by the evidence; that his findings of ultimate fact deriving from the subsidiary findings are open to reexamination by this court, as are his conclusions of law, but, even so, that his conclusion as to waiver is entitled to substantial deference."[3] *Commonwealth* v. *Meehan,* 377 Mass. 552, 557 (1979), cert. dismissed as improvidently granted, 445 U.S. 39 (1980), quoting from *Commonwealth* v. *Doyle,* 377 Mass. 132, 138 n.6 (1979). *Commonwealth* v. *Tabor,* 376 Mass. 811, 822 (1978). *Commonwealth* v. *White,* 374 Mass. 132, 137-138 (1977), aff'd 439 U.S. 280 (1978).

3. The judge determined that the "Commonwealth has failed to meet its burden of proving that defendant know-

---

[3] The defendant would have us follow the rule of *Commonwealth* v. *Mahnke,* 368 Mass. 662, 690-691 (1975), cert. denied, 425 U.S. 959 (1976), in which a majority of the court held that voluntariness is a question of fact not reviewable unless the trial judge's determination is clearly erroneous. However, our more recent decisions have followed the standard set out in the text.

ingly and voluntarily consented to the blood extraction procedure."[4]   There is ample support in the record to warrant this determination.   See *Commonwealth* v. *Cantalupo, supra* at 177, and cases cited.   As the Commonwealth concedes, each of several factors present in this case has been recognized as suggesting, although not conclusively, the absence of a voluntary consent.

Inspector Giffen failed to inform the defendant of the fatality in the accident, see *Commonwealth* v. *Tatro,* 4 Mass. App. Ct. 295, 300-304 (1976), or of his right to refuse to consent to the taking of the blood sample, see *Commonwealth* v. *Cantalupo, supra* at 178, and cases cited.   A uniformed police officer was present.   Cf. *Commonwealth* v. *Harmond, supra* at 561-562, and cases cited (presence of several uniformed officers).   The defendant's understanding and ability to reason reflectively may have been impaired by intoxication or as a result of his injuries or an emotional trauma attendant to his having just been in an accident. See *Commonwealth* v. *Meehan, supra* at 565-567, and cases cited.   Cf. *Commonwealth* v. *Cruz,* 373 Mass. 676, 689 (1977).   It may be inferred that due to the nature of his injuries, the defendant was in some pain.   Despite the defendant's apparent willingness to cooperate with Inspector Giffen he responded to the question immediately following his consent to the blood test by stating that he was incoherent.   See *Commonwealth* v. *Fielding,* 371 Mass. 97,

---

[4] The judge arguably misstated the Commonwealth's burden, by adding the requirement that the consent be "knowing," see *Schneckloth* v. *Bustamonte,* 412 U.S. 218 (1973) (holding that consent to search need only be voluntary).   The Commonwealth's brief demonstrates an awareness of the distinction between a requirement that consent be shown to be "voluntary" and a requirement that a waiver of a constitutional right, e.g., one protected by the Fifth Amendment, be "knowing," "voluntary" and "intelligent".   The Commonwealth does not argue, however, that the judge applied an erroneous standard.   Our review of the record and the transcript of the suppression hearing leads us to conclude, as apparently did the Commonwealth, that the insertion of the word "knowing" in the judge's ruling was merely inadvertent.   In any event, the Commonwealth has failed to raise this issue and it is deemed waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

109-111 (1976). While none of these factors, taken alone, is conclusive on the issue of consent, we cannot say that in the "totality of the circumstances" they could not be determined by the judge to show that the Commonwealth failed to carry its burden that the defendant voluntarily consented. The fact that the defendant was reported to be "alert" and "rational" upon entry to the hospital is not, in light of the defendant's injuries and the imminence of surgery, inconsistent with his later becoming incoherent. These facts, taken together, would suggest that he either thought he could not refuse to consent to the test or that his reasoning was impaired.

In light of the presence of these factors in the case, and the substantial deference due to the determination of the judge, we are unprepared to hold that the consent given by the defendant was voluntary as a matter of law.

The ruling of the trial judge is therefore affirmed.

*So ordered.*