COMMONWEALTH vs. GAIL F. HEATH.

Plymouth. October 13, 1981. — December 1, 1981.

Present: GREANEY, CUTTER, & KASS, JJ.

*Search and Seizure,* Consent.

On an appeal from the denial of a motion to suppress various objects from
   evidence at a criminal trial, this court held, in the totality of the cir-
   cumstances, that the Commonwealth had failed to sustain its burden
   of showing that the young female defendant had voluntarily consented
   to a search of the trunk of her automobile, where the defendant may
   have been under the influence of marijuana at the time her somewhat
   summary consent was given, had been separated from her companion,
   and was handcuffed and under arrest late at night in the presence of
   two police officers. [681-685]

INDICTMENTS found and returned in the Superior Court
Department on October 16, 1980.

A pretrial motion to suppress evidence was heard by *Stead-
man, J.,* and the cases were tried before him.

*Jane Larmon White* for the defendant.

*Robert M. Payton,* Assistant District Attorney, for the
Commonwealth.

CUTTER, J. The defendant was found guilty of unlawfully
carrying a firearm, unlawful possession of hypodermic in-
struments, unlawful possession of a class E controlled sub-
stance, and one count of receiving stolen property.[1] Her ap-
peal is based on the denial of a motion to suppress certain
items discovered in a search of the trunk of her Plymouth

---

· [1] In this court, the defendant was allowed to withdraw her appeals on
the two last mentioned convictions. She was acquitted in the Superior
Court on a charge of operating a motor vehicle under the influence of
marijuana. Her motions for required findings on various other counts
and charges were granted.

automobile. The facts are stated on the basis of the trial judge's findings after hearing the evidence relating to the motion.

Officers Kendrick and Butler of the Brockton police force on May 29, 1980, at about 11:15 P.M., were in a police cruiser on North Main Street, a two-lane highway. They saw the defendant operating a Plymouth automobile without lights and followed it. The vehicle "weaved and crossed over the double yellow line into the oncoming lane of traffic . . . on three or four occasions" in driving four to five blocks. They also saw the defendant and a young male passenger passing back and forth a lighted object between them.[2] The officers caused the defendant to stop at the side of the street. One officer checked the registration number of the Plymouth by a radio call to the police station. They discovered that the license plate was for a green Pontiac and not for a black Plymouth.

The defendant at first was unable to produce her license and registration, but eventually found the license and also the 1979 registration of a 1963 Pontiac.[3] The passenger left the vehicle and, at the suggestion of one of the officers, departed for his home in the vicinity, leaving the defendant alone with the two officers. The defendant was read Miranda warnings by each officer. She told at least one of them that she understood the warning. Asked again for her registration, she eventually emptied her pocketbook on the hood of the vehicle. Among the contents, the officers saw about twenty capsules, which they "determined to be a controlled substance, but without being able at that point to identify . . . any particular controlled substance." The defendant

[2] At the hearing on the motion, the defendant admitted that the object was a cigarette containing marijuana. The officers testified that they smelled marijuana fumes as they approached the automobile after it had stopped. The passenger dropped a hand-rolled cigarette on the ground as they appeared.

[3] The Pontiac had been owned by her previously and it (or a successor automobile) had been traded for the Plymouth which she was driving when arrested.

never produced a registration for the Plymouth, although she did produce a partly executed application for registration of it and title to it. She was then placed under arrest for operating under the influence of a drug, operating without a registration, and possession of a controlled substance.

The defendant's apartment had been damaged by fire some weeks before her arrest. Her remaining personal belongings were in the motor vehicle. She kept all her clean clothes, among other things, in the back seat. The trunk of the vehicle contained other belongings, a suitcase, and a variety of cartons and containers. Prior to any search of the automobile (except observations of the front and back seats by the officers using flashlights), the defendant was handcuffed behind her back and placed in the rear seat of the cruiser. Officer Butler asked the defendant for the keys to the ignition so that the Plymouth could be towed to a garage. The defendant produced the keys from her pocket. The officer tried all the keys and returned to ask for the keys to the trunk. The defendant indicated that the trunk key was on the key ring already produced. After a further unsuccessful test, the officer made a second request for the trunk key. Upon this request, the defendant "produced an extra key." The officer then "asked the defendant for permission to search the trunk of her . . . vehicle and the defendant said that she gave them permission to search, and . . . that it was all right for them to search this vehicle."

When the officers opened the trunk, they found an open brown vinyl pouch in which there were needles and syringes and miscellaneous jewelry. A Sucrets box contained minor paraphernalia used with cocaine. A purple bag, "inside of the case in the trunk," contained a .38 revolver. Beside it was a box of bullets.[4] A tow truck appeared and the vehicle was taken to a garage. In a search of the defendant's pocketbook at the police station, a .38 caliber unspent bullet and

---

[4] At trial it developed that these bullets were not .38 caliber and they were not admitted in evidence. At the police station she was booked for the offenses already mentioned and also for the possession of a firearm.

a cartridge casing were found as "part of the usual inventory search . . . at the police station."

The foregoing statement of facts summarizes the trial judge's findings upon the evidence adduced at the hearing on a motion. The judge concluded that "if the search of the vehicle was made without" the defendant's consent, the search results should be suppressed.[5] He in effect ruled that the consent, to be an effective exception to the requirement of a search warrant, "must be a product of an essentially free and unrestrained choice." Her "will must not be overborne, nor her capacity for self-determination critically impaired." He ruled also that "it is not imperative that the defendant know she . . . [is] given the right to refuse consent" although "lack of that knowledge is a factor for the" judge to consider. See *Commonwealth* v. *Aguiar*, 370 Mass. 490, 496-497 (1976); *Commonwealth* v. *Walker*, 370 Mass. 548, 554-555, cert. denied, 429 U.S. 943 (1976); *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 222, 248-249 (1973). He ruled further that consent must be "freely and voluntarily given, unfettered by coercion, expressed or implied, and also something more than mere acquiescence to a claim of lawful authority."

The judge's statements of the law were correct. Whether consent to a search is voluntary is "a question of fact to be determined in the circumstances of each case, with the burden of proof on the government." *Commonwealth* v. *Aguiar*, 370 Mass. at 496 and cases cited. *Commonwealth* v. *Harmond*, 376 Mass. 557, 561-562 (1978). *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 176-177 (1980). *Commonwealth* v. *Angivoni*, 383 Mass. 30, 32-33 (1981).

---

[5] We assume that the trial judge viewed this case (absent any consent) as within decisions like *Arkansas* v. *Sanders*, 442 U.S. 753, 764-766 (1979), and *Robbins* v. *California*, 453 U.S. 420, 423-428 (1981). See *New York* v. *Belton*, 453 U.S. 454, 460-463 (1981). Compare *Cady* v. *Dombrowski*, 413 U.S. 433, 445-448 (1973). So viewed, the remaining issue before him was whether the defendant voluntarily had given consent to the search of the trunk to the full extent to which the officers engaged in the search.

"[W]hether a consent to a search was in fact 'voluntary' . . . is . . . to be determined from the totality of . . . the circumstances." *Schneckloth* v. *Bustamonte,* 412 U.S. at 227. See *United States* v. *Watson,* 423 U.S. 411, 424-425 (1976). Compare the more strict standards required to show a defendant's waiver of the right to counsel. *Brewer* v. *Williams,* 430 U.S. 387, 404 (1977).

The trial judge made further findings, (a) that the defendant did not appear to him "to be the nervous type or . . . easily intimidated," (b) that she did not "appear confused by . . . questions" but answered them "directly" and in a forthright manner, (c) that she "had a good recollection" and "full knowledge of the circumstances," (d) that she was offered no reward, and (e) that there was not "any intimidation." He concluded "that she did give consent to the [search of the] trunk [and] that the consent was voluntary."

"The narrow issue before us on the denial of the motion to suppress is whether the evidence warranted the findings made by the judge. . . . The determination of the weight of the evidence is the function of the judge who saw and heard the witnesses, and not of this court." If "the evidence was sufficient to warrant all of the subsidiary findings made by the judge" and if "his subsidiary findings support his general findings . . . based thereon," we ordinarily accept his findings as true and do not substitute our judgment for his. *Commonwealth* v. *Murphy,* 362 Mass. 542, 547 (1972). An appellate court, however, is free to review the "legal conclusions to be drawn from the subsidiary facts found by the judge." *Commonwealth* v. *Harmond,* 376 Mass. at 560, and cases cited. See *Commonwealth* v. *Davis,* 380 Mass. 1, 3-4 (1980), which says (at 4), the judge's conclusions "are entitled to respect" but are not binding upon the appellate court which is entitled to submit them to its "independent judgment." See *Commonwealth* v. *Angivoni,* 383 Mass. at 33.

We accept the judge's subsidiary findings, as far as they go, as supported by the evidence. The defendant, however,

contends that various factors require that we determine whether each of these has been dealt with adequately by the judge. (a) It appears that the defendant had never before been arrested.[6] See *Commonwealth* v. *Cain,* 361 Mass. 224, 229 (1972). Compare *United States* v. *Watson,* 423 U.S. at 424-425. There was evidence that she had not been arrested, although she had "been in court." There is no indication to what extent the judge did take into account her lack of prior experience with police practices. (b) The defendant, of course, was in custody and in handcuffs. The judge's findings refer to this for he ruled that "custody alone has never been enough to demonstrate coerced consent." It is not clear, however, to what extent he gave consideration to possibly coercive aspects of this midnight arrest. (c) The defendant testified that when arrested she was "confused and scared." The judge was not required to believe this testimony and could give appropriate weight to his observations of her in the courtroom. The courtroom, of course, was a setting substantially different from that on the night of her arrest. (d) The defendant, when she consented to the search, was alone. See *Commonwealth* v. *Cain,* 361 Mass. at 227, 229. Her male companion had departed, leaving her without any support in the presence of two officers. This fact the judge referred to in his findings, but they do not show to what extent he took this factor into account. (e) The officers asked the defendant, so the judge found, two or three times for the keys to the trunk of the automobile. The trial judge's findings show that he was aware of these requests. He failed, however, to view them as coercive or in-

---

[6] The evidence showed that the defendant, then twenty-three, had been married twice (at age fifteen and age eighteen) and twice divorced and that after the fire in her apartment she had lived, at least much of the time, in the automobile in which she was driving on May 29, 1980, and in a prior vehicle owned by her. After the fire, the defendant's young son lived with the defendant's sister, who would not let the defendant sleep at her house. The judge reasonably refused to receive additional evidence of her marital difficulties as bearing upon her "personality and . . . character traits" to indicate whether she was a person "who would just submit to authority or . . . a coercive setting."

timidating. (f) The officers had afforded the defendant the usual Miranda warnings but it does not appear that she was warned specifically of her absolute right to refuse consent to a search of the trunk. The judge's statement of the law (already mentioned) shows that he knew that this factor, not conclusive, must be taken into account. (g) The two officers had charged her with operating under the influence of marijuana on the basis of her weaving across the yellow line on the street and her appearance when stopped.[7] The judge's findings mention the smoking of marijuana[8] but do not indicate to what extent he gave consideration to the possibility that the defendant, if under the influence of a drug, may not have been able to give a truly voluntary consent.[9] The case is not like *Commonwealth* v. *Egan, ante* 658 (1981), where the defendant giving consent was an experienced police officer.

In important respects this case involved an issue of credibility as between (1) the officers claiming that the defendant did consent to the search of the trunk and (2) the defendant taking the "position . . . that she did not consent." Although the trial judge is usually in a better position to form a judgment on credibility than we are, his finding that the defendant did give a voluntary consent is a conclusion on the crucial issue. As to this conclusion (under

---

[7] Officer Kendrick testified that when he spoke to her, "[h]er eyes were glassy," her speech was "heavily slurred," she was "unsteady on her feet" and was "staggering a little bit." Officer Butler's testimony was that she "was unsteady on her feet" but "not staggering." Her speech was not "slurred but it was different than normal." As has been stated (note 1, *supra*), she was acquitted of the charge of operating under the influence of marijuana.

[8] The judge made note that "the aroma of the marijuana and the dropping of the marijuana cigarette . . . were clear indications that something was going on inappropriate in that" automobile.

[9] The defendant testified that she had been smoking for "only . . . a couple of blocks" although she admitted that she and her companion "were pretty well down to the end of the joint." No issue of the effect of the marijuana upon the defendant appears to have been argued to the trial judge in coherent fashion. Compare *Commonwealth* v. *Tisserand,* 5 Mass. App. Ct. 383, 388 (1977).

the decisions already cited) we must exercise our independent judgment, at the same time giving "substantial deference" to the determination of the judge. *Commonwealth* v. *Doyle*, 377 Mass. 132, 137-138, & n.6 (1979). See also the *Angivoni* case, 383 Mass. at 33.

We recognize that the trial judge (who also dealt with the motion to suppress, a hearing improvidently postponed by counsel to the very day of trial) was obliged to rule on the motion after only a very short opportunity to consider the evidence and thereafter to reduce his findings to writing. We have had much more adequate opportunity to consider the situation. We appraise the "totality of the circumstances" (see the *Angivoni* case, at 35, *supra*).

This young female defendant was not shown to have had a prior arrest record. She had been smoking marijuana just before her arrest (see n.8). The police testimony (see n.7) indicates that she may have been under some degree of drug influence. She had been deprived of the support of her only companion. She was under arrest, admittedly in handcuffs fastened behind her back, and in the presence of two officers, a situation which carried with it some inherent tendency to coerce. One of these officers (so the evidence on the motion strongly suggests, although the judge made no finding on this issue) may have continued to question her after she had asked for an attorney.[10] The Commonwealth failed to establish that the search of the trunk made by the two officers did not exceed, in scope and detail, the somewhat summary permission given by the defendant.

We think that this is not a case like *Commonwealth* v. *Harmond*, 376 Mass. at 562, where "the issue of voluntariness . . . [is] capable of rational resolution either way." Despite the result reached by a conscientious trial judge, we conclude, as a matter of our independent judgment on the basis of the "totality" of the particular circumstances, that the Commonwealth has not sustained its burden of showing

---

[10] At trial, Officer Kendrick admitted some questioning of the defendant after she had requested an attorney.

voluntary consent and that the order on the motion to suppress must be reversed.  See *People* v. *Gonzalez,* 39 N.Y.2d 122, 130 (1976, per Breitel, C.J.), on facts considerably more favorable to the defendants there involved, but still somewhat analogous to the present situation.  With the items found in the search of the trunk suppressed, there remains no evidence that this defendant was carrying a firearm or in possession of hypodermic instruments.  It would have been necessary to allow motions for required findings of not guilty on these charges.

The judgments of conviction on the indictments charging the offenses just mentioned are reversed, the verdicts are set aside, and the cases are remanded to the Superior Court Department for entry of a judgment of not guilty on each such indictment.

*So ordered.*