COMMONWEALTH vs. JAMES BARNES.

Suffolk.  May 7, 1985. — September 11, 1985.

Present: GREANEY, C.J., CUTTER, & DREBEN, JJ.

*Constitutional Law*, Waiver of constitutional rights, Assistance of counsel,
Self-incrimination, Search and seizure. *Search and Seizure*, Consent.
*Waiver*.

Where no evidence at the hearing on a pretrial motion to suppress suggested
that a suspect's freedom had been restricted in any way, or that police
were aggressive in questioning him, during a brief station-house inter-
view for which he had appeared voluntarily, the judge could not properly
conclude that the interview was custodial in nature. [751-752]
Where a station-house interview between police officers and a suspect later
charged in connection with a fatal motor vehicle accident was noncusto-
dial in nature, the suspect's request to speak to an attorney did not render
his statements later in the interview inadmissible in evidence against him
under the principles of *Miranda* v. *Arizona*, 384 U.S. 436 (1966). [752]
In a criminal case there was no basis for the defendant's claim that police
had denied him his right to counsel under the Sixth Amendment to the
United States Constitution during questioning which took place prior to
his having been taken into custody. [753]
A motion judge's specific finding that a criminal defendant had given police
permission to seize his truck for purposes of their investigation of a fatal
accident, considered together with this court's review of testimony at a
suppression hearing and the defendant's failure to advance any claim
that his consent was not voluntary, warranted the conclusion that the
defendant voluntarily consented to the seizure of the vehicle and that,
consequently, the conduct of the police violated no rights of the defendant
under the Fourth Amendment to the United States Constitution. [753-755]

COMPLAINT received and sworn to in the Dorchester Division
of the District Court Department on July 16, 1984.

A motion to suppress evidence was heard by *Darrell L.
Outlaw*, J.

*Marcy Cass*, Assistant District Attorney, for the Common-
wealth.

*Isaac Prager* for the defendant.

DREBEN, J. This is an appeal by the Commonwealth, pursuant to Mass.R.Crim.P. 15(a) (2), 378 Mass. 882 (1979), from the allowance of the defendant's motion to suppress evidence. We conclude that the evidence should not have been suppressed.

We take our findings from the very meagre account given by the motion judge, supplemented by evidence elicited from the police officer who was the only witness at the hearing on the motion to suppress. During the course of an investigation of a fatal hit-and-run accident reported by witnesses to have involved a pick-up truck equipped with a snowplow bracket, the police learned that the defendant owned a similar vehicle. The defendant, interviewed by the investigating officer at the defendant's place of business, was asked whether he owned such a truck. He acknowledged that he did, informed the officer that the vehicle was in his backyard at home, and told the officer to "go down and look at it." On inspecting the truck, the officer noted the similarity between the license plate (66417) and the number given by a witness (6617). The defendant also showed him a snowplow bracket.

Suspecting that the truck had been involved in the accident, the officer asked the defendant if he would come to the station.[1] The defendant was not arrested or told that he was required to present himself. He proceeded to the station on his own, unaccompanied by the officer. Once there, the defendant was read his Miranda rights and was asked if he knew anything about the accident. The defendant replied, "I don't remember being in an accident. I was drunk. I would sooner talk to my lawyer."

We quote the judge's next finding which he considered crucial to his ruling on the motion: "The officer did not cease the questioning at this point, but went on and asked the defendant if the officer could tow the truck and plow to have paint analyzed; said permission was granted."

[1] In the words of the motion judge, "The investigation had already begun to focus on the defendant when he was requested to come to the police station on June 20, 1984."

Following this brief interview, the defendant was allowed to leave the police station. After he returned home, he made no objection to the removal of the truck. Six days later, after laboratory analysis of the paint on the truck indicated that the truck had been involved in the accident, the defendant was cited for vehicular homicide, leaving the scene after causing property damage, and leaving the scene after causing personal injury.

On this evidence, the judge made the four rulings reproduced in the margin[2] and allowed the defendant's motion to suppress. The defendant's arguments, as did the rulings of the judge, assume that the safeguards protecting the defendant's Fifth Amendment rights established in *Miranda* v. *Arizona,* 384 U.S. 436, 444 (1966), apply in this case.[3] We conclude that the officer's request was not made during a "custodial interrogation" within the meaning of *Miranda,* and that the defendant's Fifth Amendment rights were therefore not implicated. We also conclude that since the defendant consented to the search there was no violation of the Fourth Amendment. While the protections of a person's rights under the Fourth and Fifth Amendments may be related, different standards apply to each amendment.

---

[2] "The Commonwealth has the burden of establishing that the defendant made a knowing and intelligent waiver of his rights. *Comm.* v. *Cain* [361 Mass. 224 (1972)].

"If the defendant indicates in *any* manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning. [Emphasis original].

"The mere fact that the accused may have answered some questions or volunteered some statement on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned. *Miranda* v. *Arizona,* 384 U.S. 436 [(1966)].

"The defendant may choose to invoke his right to remain silent at any point before or during the interrogation. If the defendant requests his attorney, the interrogation must cease until an attorney is present. *Miranda* v. *Arizona,* 384 U.S. 436, 474 [(1966)]."

[3] The court in *Miranda,* 384 U.S. at 444-445 stated: "If . . . [the defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning"; the opinion also states, at 444: "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."

1. We turn to the question whether the procedural protections to secure the defendant's privilege against self-incrimination under the Fifth Amendment to the United States Constitution govern here. The defendant claims that the officer's request to tow the vehicle was an improper questioning of the defendant which took place after the defendant's request to consult with counsel. The exclusionary rule of *Miranda* applies, however, only if the defendant's procedural safeguards are violated during a "custodial interrogation." *Miranda,* at 444. *Oregon* v. *Mathiason,* 429 U.S. 492, 494-495 (1977).

While the judge did not explicitly rule that the interview was custodial, we assume from his rulings of law and his finding that the "investigation had already begun to focus on the defendant when he was requested to come to the police station," see note 1, *supra,* that he implicitly concluded that the interrogation was custodial. That conclusion, however, is open to reexamination by an appellate court, *Commonwealth* v. *Angivoni,* 383 Mass. 30, 33 (1981), and, in our opinion, is unsupported by the evidence.

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Commonwealth* v. *Bryant,* 390 Mass. 729, 736 (1984), quoting from *Miranda* v. *Arizona,* 384 U.S. at 444. The inquiry is "whether, from the point of view of the person being questioned, the interrogation took place in a coercive environment — by reference to objective indicia." *Commonwealth* v. *Bryant, supra* at 736. A variety of factors establishes the framework for determining whether a custodial interrogation has taken place.[4] "Rarely is any single factor conclusive." *Id.* at 737.

---

[4] Factors considered in previous cases and listed in *Commonwealth* v. *Bryant,* 390 Mass. at 737 are: "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview

Although some factors here weigh against the Commonwealth, we do not deem them conclusive. The fact that the defendant was read his Miranda rights when he arrived at the station may be understood to be only a step taken in an abundance of caution. See *Commonwealth* v. *Bookman*, 386 Mass. 657, 660-661 (1982); *Commonwealth* v. *Harris*, 387 Mass. 758, 765 (1982). Neither the fact that the focus of the investigation was on the defendant, *Beckwith* v. *United States*, 425 U.S. 341, 345-347 (1976), nor the fact that the interview took place in a police station is decisive. *Oregon* v. *Mathiason*, 429 U.S. at 495. *California* v. *Beheler*, 463 U.S. 1121, 1123-1125 (1983). *Commonwealth* v. *Best*, 381 Mass. 472, 494 .(1980). *Commonwealth* v. *Bookman*, 386 Mass. at 660. *Commonwealth* v. *Harris*, 387 Mass. at 765.

What is significant here is that the defendant voluntarily went to the police station and that he left the station without hindrance shortly after giving his consent to tow the vehicle. There is no evidence suggesting that his freedom to depart at any time was in any way restricted or that the questioning during the very brief meeting was aggressive. No charge was filed against the defendant until six days after he had been questioned at the station. In such circumstances "the interview involved here cannot be considered a custodial interrogation." *Commonwealth* v. *King*, 387 Mass. 464, 474 (1982). *California* v. *Beheler*, 463 U.S. at 1124-1125. See *Commonwealth* v. *Gill*, 393 Mass. 204, 212 (1984). The encounter not being custodial, the defendant's request to speak to counsel does not render his statements (see part 2, *infra*) inadmissible under the Miranda rule. *Commonwealth* v. *King*, 387 Mass. at 474.[5]

by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant's arrest."

[5] Because of our conclusion that the interrogation was not custodial we need not determine whether the defendant's consent in response to the officer's request for a search is a testimonial statement within the meaning of *Miranda*. Cf. *Commonwealth* v. *Hughes*, 380 Mass. 583, 588-595, cert. denied, 449 U.S. 900 (1980). A number of cases suggest that it is and, therefore, if the request for a search is made during a custodial interrogation, a defendant's Fifth Amendment safeguards apply. See, e.g., *United States* v. *Fisher*, 329 F. Supp. 630, 634 (D. Minn. 1971); *Arizona* v. *King*, 140 Ariz. 602, 604 (Ariz. Ct.

2. The defendant's additional reliance on the right to counsel under the Sixth Amendment is misplaced. As indicated in part 1 of this opinion, the defendant was not in custody and therefore had no right to counsel in the exercise of his Miranda rights. At this early stage of the proceeding, he clearly had no constitutional right to counsel under the Sixth Amendment. *Commonwealth* v. *Stirk,* 392 Mass. 909, 913 (1984).[6] See *United States* v. *Gouveia,* 467 U.S. 180, 187-188 (1984).

3. We turn, therefore, to the legal requirements for valid consent under the Fourth Amendment, the only source of the defendant's constitutional protections here applicable.[7] A seizure does not offend the Fourth Amendment if the Commonwealth can establish that it was made with the defendant's voluntary consent. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219 (1973). *Commonwealth* v. *Aguiar,* 370 Mass. 490, 496-497 (1976). A person does not have to be advised of his right to insist on a search warrant for his consent to be voluntary. *Commonwealth* v. *Aguiar* at 497. *Commonwealth* v. *LaBriola,* 370 Mass. 366, 367 (1976). Nor does the Commonwealth have the burden, urged by the defendant and imposed by the judge,

---

App. 1984); *Pirtle* v. *State,* 263 Ind. 16, 25 (1975); *Sims* v. *State,* 274 Ind. 495 (1980); *People* v. *Johnson,* 48 N.Y. 2d 565, 568-569 (1979); *Schorr* v. *State,* 499 P.2d 450, 456 (Okla. Crim. App. 1972), overruled in part on other grounds, *Rowbotham* v. *State,* 542 P.2d 610 (Okla. Crim. App. 1975); *State* v. *Williams,* 248 Or. 85, 92-93 (1967). But see *State* v. *Roy,* 28 Or. App. 861, 865 (1977). See also, Note, Consent Searches: A Reappraisal After Miranda v. Arizona, 67 Colum. L. Rev. 130 (1967). There is, however, strong authority to the contrary. See, for example, the following cases indicating that a consent to a search or to a seizure is not within the ambit of *Miranda: United States* v. *Lemon,* 550 F.2d 467, 472 (9th Cir. 1977); *Smith* v. *Wainwright,* 581 F.2d 1149, 1150-1152 (5th Cir. 1978); *Cody* v. *Solem,* 755 F.2d 1323, 1329-1330 (8th Cir. 1985); *People* v. *James,* 19 Cal. 3d 99, 114-115 (1977); *People* v. *Phillips,* 197 Colo. 546, 548-549 (1979); *People* v. *Wegman,* 101 Ill. App. 3d 634, 636-638 (1981). Cf. *New York* v. *Quarles,* 467 U.S. 649, 667-669 (O'Connor, J., concurring in part in the judgment and dissenting in part, 1984). See generally 2 LaFave, Search and Seizure § 8.2(j), at 672 (1978), and cases cited, where the author states "The prevailing and better view" is that a consent to search is not within the scope of *Miranda.*

[6] For a discussion of a consent to search after the right to counsel attaches, see 2 LaFave, op. cit., § 8.2(k).

[7] The defendant makes no claim under the Massachusetts Constitution.

see the first ruling in note 2, *supra,* of establishing a knowing and intelligent waiver by the defendant of his rights. *Schneckloth* v. *Bustamonte,* 412 U.S. at 232-233, 246. *Commonwealth* v. *Angivoni,* 383 Mass. 30, 34 n.4 (1981). This is so even if the defendant is in custody at the time he consents to a search. *United States* v. *Watson,* 423 U.S. 411, 424 (1976). *Commonwealth* v. *LaBriola,* 370 Mass. at 367. *Commonwealth* v. *Aguiar,* 370 Mass. at 497.[8]

Whether a consent is voluntary is a question of fact to be determined from all the circumstances. *Commonwealth* v. *Angivoni,* 383 Mass. at 33. Although the police are not required to explain to the defendant that he has a right to refuse, such an omission is a factor to be taken into account in assessing the voluntariness of the consent, *Schneckloth* v. *Bustamonte,* 412 U.S. at 249; *Commonwealth* v. *Cantalupo,* 380 Mass. 173, 178 (1980), as is, if applicable, the fact of a defendant's arrest or of his being in custody. Consultation with counsel is, of course, also a factor. Thus, consent given after such a consultation will usually be held voluntary. See *Commonwealth* v. *Harris,* 387 Mass. at 766. None of these circumstances is, however, decisive. *Commonwealth* v. *Aguiar,* 370 Mass. at 497. *Commonwealth* v. *Harmond,* 376 Mass. 557, 561-562 (1978).

The judge's only finding on the issue of the voluntary nature of the defendant's consent was that "permission [to tow the truck and plow to have paint analyzed] *was granted*" by the defendant (emphasis supplied). The defendant, however, does not claim that his consent was not voluntary under the correct standard. His only claims, rejected in parts 1 and 2 of this opinion, are that the procedural safeguards applicable to the Fifth and Sixth Amendments pertain.

---

[8] It is thus established that the waiver requirements of *Miranda* are not incorporated in the Fourth Amendment even when consent is given in a custodial environment. Whether the Fifth Amendment demands more if such consent is viewed as testimonial, or whether other Miranda precautions, e.g., no questioning after a request for counsel, are required, are questions we need not decide. See note 5, *supra.*

Although we normally would consider such scanty findings insufficient, the specific finding that permission was granted, together with our review of the testimony, and the absence of a claim by the defendant that his consent was not voluntary under the criteria of the Fourth Amendment, lead us to conclude that a remand for findings under these standards is unnecessary. Contrast *Commonwealth* v. *Comolli,* 14 Mass. App. Ct. 607, 613-614 (1982).

Accordingly, the order allowing the defendant's motion to suppress is reversed,[9] and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[9] Because of our holding that the defendant's consent to the seizure was voluntary, we do not reach the Commonwealth's claims that there were exigent circumstances and that the evidence would have inevitably been discovered by the police.