Agnes, Peter W., J.
I. INTRODUCTION
The defendant is charged as a fourth offender with the felony grade of the offense of operating a motor vehicle while under the influence of intoxicating liquor in violation of G.L.c. 90, §24. He has moved to suppress evidence consisting of blood test results obtained as a result of blood drawn from him by personnel at the Anna Jacques hospital following his arrest and tested by the State Police Laboratory in Sudbury. Based on the credible evidence presented at the hearing I make the following findings of fact and rulings of law.
II. FINDINGS OF FACT
On January 6, 2005, Newbury Police Officer Daniel Cena was in uniform operating a manned police cruiser when, at approximately 5:30 p.m., he responded to the scene of a motor vehicle accident. Officer Cena observed a red truck which was off the road in a ditch. Based on a preliminary inquiry, Officer Cena concluded that the defendant, Joseph Pratt, was the operator of the red truck.
The defendant was seated in a passerby’s vehicle. He had a cut on his chin. His shoes were off. There was an odor of an alcoholic beverage coming from his mouth. His eyes were red and glassy. Officer Cena formed the opinion that the defendant had been operating his vehicle while under the influence of alcohol. The defendant was arrested. However, due to his physical condition, the officer called an ambulance and arranged for the defendant to be transported to the hospital.
Officer Cena arrived at the hospital at approximately 6:15 p.m. and was informed that the defendant was being treated by medical personnel. In the presence of a male doctor and a female nurse, Officer Cena advised the defendant of the charges and had a brief conversation with the defendant. The defendant said he had only consumed 1V2 beers. The defendant pleaded with Officer Cena to “write it up as an accident.”
The defendant appeared to understand Officer Cena and responded appropriately. The defendant did not appear disoriented. According to the defendant’s medical records,[1] the Emergency Room Assessment indicates that the defendant was alert and oriented to time, place, and person and responded appropriately to questions with some slurring of speech. The physician attending to the defendant indicated that the defendant was awake and alert, with alcohol on his breath. Officer Cena offered to arrange for a blood alcohol test.[2] The defendant agreed. Officer Cena requested and obtained a consent form for the testing of blood for legal purposes from hospital personnel. The defendant read the form, said he understood it, and signed it.[3]
A female registered nurse drew a sample of blood from the defendant. Emergency Room Nurse Christine Trecartin recalled the defendant being admitted post motor vehicle accident. Nurse Trecartin was asked to draw blood for the police and recalled that the defendant consented. Although the defendant appeared restless, Nurse Trecartin recalled that he seemed oriented and indicated that the defendant understood what he was doing. Nurse Trecartin was present when the defendant signed the consent form at 7:56 p.m. Thereafter, the nurse prepared the site with a solution of alcohol-free betadine and withdrew the defendant’s blood, filling two purple capped vials which she placed into a biohazard bag and put into a cup of ice. The sample was given to Officer Cena who took the blood to the police station, logged it in, and stored it in a refrigerator.[4]
The following day, Officer Cena took the sample to the State Police Laboratoiy in Sudbury for testing. Officer Cena had no knowledge of a policy of the Newbury Police Department concerning the collecting of evidence.
*426 III. DISCUSSION
A. CONSENT
The taking of a blood sample to test for blood alcohol level constitutes a search and seizure within the meaning of the Fourth Amendment. See Schmerber v. California, 384 U.S. 757, 767 (1966); Commonwealth v. Angivoni, 383 Mass. 30, 32 (1981). Consent is a sufficient basis for the taking of a blood sample if the Commonwealth establishes “consent unfettered by coercion, express or implied . . . [which is] something more than mere acquiescence to a claim of lawful authority.” Id. at 33, citing Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). “Voluntariness of consent ‘is a question of fact to be determined in the circumstances of each case . . .’ ” See Commonwealth v. Cantalupo, 380 Mass. 173, 177 (1980), citing Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976). A defendant may give voluntary consent to a search even while under arrest. See Commonwealth v. Franco, 419 Mass. 635, 642 (1995).
The defendant maintains that his consent to the taking of blood for the purpose of a blood alcohol test was impaired as the result of a laceration to the chin which required sutures. A court considers a number of factors when making a determination whether a defendant’s consent was voluntary. See Commonwealth v. Angivoni, 383 Mass, at 35 (absence of voluntary consent based upon intoxication, serious nature of injuries, level of pain, impending surgery, and defendant’s statement that he was incoherent). In this case, the evidence leads the court to conclude that the written consent executed by the defendant was voluntary, unfettered by express or implied coercion. An-givoni, at 33.
The defendant’s motor vehicle accident occurred at approximately 5:30 p.m. Consent to the taking of a blood alcohol test for legal purposes was given at 7:56 p.m., with the blood being drawn and given to Officer Cena shortly thereafter. From the time of the defendant’s admission to the Emergency Room until the time of the blood collection at issue, the collective recollections of Officer Cena and the Emergency Room personnel who provided treatment to the defendant was consistent. Indeed, after Officer Cena’s arrival at the Emergency Room, the defendant appeared to understand the events which led to his arrest when he asked Officer Cena to “write it up as an accident.” At the time of the blood collection, the defendant was alert, oriented, and verbalized understanding of the consent form he was given to sign at his request. Moreover, the defendant points to no act by Officer Cena which would qualify as unfettered coercion. Angivoni, 383 Mass, at 32.
In addition, the medical records provide no support for the premise that the defendant’s consent was less than voluntary. Neither does the defendant establish a subjective level of pain or severity of injury which compromised his ability to understand and question Officer Cena or Nurse Tricartin in a coherent manner. Id. at 35. The defendant was awaiting transport for X-rays as well as for a physician to arrive to suture the defendant’s chin laceration. Based upon these facts, the defendant’s consent to the taking of blood for legal purposes was voluntary.
B. HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 (HIPAA)
HIPAA, and the regulations promulgated thereunder, support the broad policy of protecting individually identifiable health information as private.[5] Covered entities, such as the Anna Jacques Hospital, may disclose a defendant’s health information without a defendant’s authorization or opportunity to object or agree in certain limited situations.[6] It is doubtful that the State Police Laboratory is considered a covered entity pursuant to HIPAA, therefore the defendant necessarily based his argument on the taking of blood for legal purposes performed by Nurse Trecartin even as the hospital laboratory did not, in fact, either test or analyze the drawn samples.[7]
Standard (f) permits the release of protected information for certain law enforcement purposes to a law enforcement official provided the release “complies with and is limited by the relevant requirements of a court order or a court-ordered warrant, or a subpoena or summons issued by a judicial officer . ..” 45 C.F.R. 164.512(f)(l)(ii)(a). However, such release of information is limited to: (A) name and address; (B) date and place of birth; (C) social security number; (D) ABO blood type and Rh factor; (E) type of injury; (F) date and time of treatment; (G) date and time of death, if applicable; and (H) a description of distinguishing physical characteristics, including height, weight, gender, race, hair and eye color, presence or absence of facial hair (beard or moustache), scars, and tattoos. Thus, the Anna Jacques Hospital would have remained in compliance of the Act by release of any of the foregoing data to a law enforcement official, such as Officer Cena, in the absence of notice to the defendant and without providing the defendant an opportunity to object. 45 C.F.R. 164.512(f)(2)(I).
The defendant argues that release of the vials of blood drawn by Nurse Tricartin to Officer Cena imper-missibly intruded upon the privacy of the defendant’s individually identifiable health information because the vials of blood and any subsequent test or analysis consisted of “protected health information related to the individual’s DNA or DNA analysis, dental records, or typing, samples or analysis of body fluids or tissues.” 45 C.F.R. 164.512(f)(l)(ii). Accordingly, testing or analysis of the defendant’s blood for blood alcohol concentration was protected health information as it concerned a law enforcement request for the purpose of identifying the defendant as one suspected of driving while under the influence of alcohol. 45 C.F.R. 164.512(f)(2). However, the mere record of the act of drawing blood samples, without more, appears to *427 contain no information individually identifiable to the defendant other than his name, hospital number, and the date and time of the blood draw.
The defendant’s right to privacy concerning the blood samples and subsequent testing is neither absolute or dispositive concerning this matter. Where medical records which contain the result of blood alcohol testing are non-privileged and obtained by court order, the requirements of HIPAA are satisfied. See Commonwealth v. Fahey, 2004 WL 3090751 (Mass.Super.). Moreover, when the Newbury police request information which includes blood test results which are relevant and material to an ongoing criminal investigation, the defendant’s federal right of privacy in this particular result is outweighed in light of the Commonwealth’s need for the protected information. See In re: Grand Jury Subpoena John Doe, 197 F.Sup. 2d 512, 514 (E.D. Virginia 2002). Finally, the defendant waived any claim to privacy in the protected information when he agreed to and executed a written consent to the taking of blood for legal purposes. In effect, his authorization in the absence of express or implied coercion, effectively abrogated any right to privacy and protection concerning the result of the blood alcohol analysis, which analysis was not performed by a covered entity, the Anna Jacques Hospital. See Commonwealth v. Angivoni, 383 Mass. 30, 33 (1981).[8]
C. CHAIN OF CUSTODY
Admissibility of blood alcohol testing is dependent upon a demonstration of the chain of custody and proper preservation of the evidence. See Irwin v. Ware, 392 Mass. 745, 750 (1984), and cases cited therein. Circumstances must establish that the blood sample was taken from the defendant and arrived at the State Police Laboratory virtually unchanged. Id. The defendant maintains that the overnight storage of his blood samples in the refrigerator located at the Newbury Police Station raise serious doubt concerning the preservation of the blood evidence.
The evidence established that the Officer Cena was unaware of a policy which governed proper preservation of physical evidence. Officer Cena proceeded to log the evidence and store it in the station refrigerator until the Officer took the samples to the State Police Laboratory the following day. Any claim that the conduct of Officer Cena impaired the integrity or preservation of the blood evidence in this case must fail because the policy to which the defendant relies was not put into evidence. Exhibits 2 and 3 depict the refrigerator in the locker room at the Newbury Police Station. The mere allegation that all members of the police force had access to the refrigerator and perhaps all of its contents, without more, fails to establish a break in the chain of custody nor any resulting compromise in the blood alcohol evidence. Therefore, as the defendant concedes, challenges to the chain of custody concerning the vials of the defendant’s blood samples affects the weight of the evidence rather than its admissibility. See Commonwealth v. Howe, 405 Mass. 332, 335 (1989); Commonwealth v. Russo, 30 Mass.App.Ct. 923, 926 (1991) (a presumption of reliability is afforded certain professional routines); Commonwealth v. Rivet, 30 Mass.App.Ct. 973. 975 (1991) (generalized objections concerning chain of custody raised at trial).
D. INDEPENDENT TEST OF THE BLOOD SAMPLES HELD AT THE STATE POLICE LABORATORY
The defendant also claims that at this stage of the proceedings he should be entitled to conduct a test of any blood samples that remain left over after the testing that was performed by the Massachusetts State Police laboratory.
Mass. Gen. Laws c. 90, §24(e) provides in part that when a breath test or blood test is conducted “by or at the direction of a police officer,” and with the consent of the defendant, the defendant has a right to obtain the results upon request and a “reasonable opportunity ... to have another such test or analysis made . . .” Compare G.L.c. 263, §5A (person in custody “at a police station or other place of detention” and charged with operating under the influence of alcohol must be informed of the right to an independent medical examination and given “a reasonable opportunity to exercise it”).[9]
The court has found that the defendant consented to the taking of his blood for legal purposes and thus was aware that the police intended to conduct their own independent analysis of his blood alcohol level. G.L.c. 90, §24(l)(e), unlike G.L.c. 263, §5A does not include a requirement that the police must advise the defendant that he may have another test or analysis conducted. However, by its own terms, G.L.c. 263, §5A does require the police to inform the defendant of the right to an independent examination whenever the defendant is in custody “at a police station or other place of detention . . .” Here, the defendant was arrested at the scene and transported to the hospital for treatment. He was in the custody of the police and thus not free to leave. While a private hospital would not ordinarily be thought of as a “place of detention,” it qualifies as such under the circumstances of this case for it is the express purpose of G.L.c. 263, §5A to require the police to give notice to persons who are in police custody and under arrest for operating under the influence of alcohol of their right to an independent medical examination at their own expense. Compare Commonwealth v. Amato, Lawyers Weekly No. 16-028-04 (Marlborough District Court (2004) (Sullivan, J.) (interpreting G.L.c. 90, §24(1) (e) to require the police to give a defendant the notice required by G.L.c. 263, §5A in circumstances in which the defendant is transported from the scene of a motor vehicle crash to the hospital for treatment and while at the hospital consents to a blood test at the request of the police *428 because he is suspected of operating under the influence even though the defendant is not at the time under arrest or in police custody; court excludes the results of the police initiated blood test because no notice was given).
In this case, the defendant makes no argument that his right to receive notice under G.L.c. 90, §24(l)(e) or G.L.c. 263, §5A was infringed. Presumably, when the defendant was brought to the police station for booking he did receive notice of his rights under G.L.c. 263, §5A. Moreover, there is no reason to presume any prejudice even if the defendant did not receive notice of the right to an independent medical examination because the hospital that treated him did two independent blood tests in connection with the medical treatment he received on the night of his arrest.
Nonetheless, the question remains whether the defendant should have the opportunity at this time to undertake an examination of the blood drawn by hospital personnel at the request of the police and with the consent of the defendant under G.L.c. 90, §24(l)(e) which presently remains in the custody and possession of the State Police Laboratory in Sudbury.[10] The procedure by which blood alcohol testing is performed is governed by The Office of Alcohol Testing as established under 24 C.M.R. §§2.29, 2.30[11] and the regulations promulgated thereunder.[12] These regulations, adopted under the authority of the Department of the State Police, Office of Alcohol Testing, provide guidance concerning the defendant’s claim of entitlement to the blood samples processed by the State Police Laboratory.
The Regulations for Blood Analysts provide that all blood samples shall be kept frozen for a period of six months after the date of the testing.[13] Section 10.0 concerns that procedure to be followed in the event a defendant requests analysis of the blood sample.[14] The blood analyst shall then “in the presence of the defense, divide the sample in two. Half will be given to the defense. Half will be re-analyzed by the blood analyst as soon as is practicable, but will be done within seven (7) days of dividing the sample . . . The remaining blood will be kept frozen until the pending charges are adjudicated.’’ There is no evidence before the court that the blood sample in this case has been discarded, destroyed, or consumed. See Commonwealth v. Gordon, 422 Mass. 816, 836 (1996) (Commonwealth consumed evidence in course of testing blood stains; Commonwealth notified defendant of the possibility but defendant declined to send own expert); Commonwealth v. DiBenedetto, 427 Mass. 414, 419 (1998) (testing by Commonwealth destroyed portion of blood evidence on left sneaker; defense tested remainder and right sneaker as well); Commonwealth v. Troy, 405 Mass. 253, 261 (1989) (juiy may draw adverse inference from Commonwealth’s careless loss of defendant’s blood samples). There is no evidence to suggest that the blood in question is no longer suitable to be analyzed. Thus, the defendant, for reasons grounded in public policy as expressed in G.L.c. 90, §24(l)(e) and G.L.c. 263, §5A, should have the right to test or analyze the preserved remainder of the blood sample(s) drawn at the Anna Jacques Hospital on January 6, 2005, and currently in the possession of the State Police Laboratory in Sudbury, Massachusetts. If the defendant wishes to conduct such a test and it would consume the only remaining portion of his blood, the Commonwealth should have an opportunity to seek a protective order with respect to the manner and means by which this evidence will be tested.
IV. ORDER
For the foregoing reasons, the defendant’s motion to suppress evidence of blood alcohol levels based upon blood samples obtained with his consent on January 6,2005, and subsequently tested by the State Police Laboratory is DENIED. It is hereby ORDERED that the defendant be afforded the opportunity to have one-half of the portion of the blood sample(s) remaining tested or analyzed. The remaining portion may be re-analyzed by the State Police Laboratory or preserved. If the testing procedure proposed by the defendant will require use of the entirety of the remaining portion of his blood, the Commonwealth shall be given an opportunity to apply for a protective order.

The medical records are contained within Exhibit 4.

A valid breath test could not be performed at the hospital.

See Exhibit 1.

See Exhibits 2 and 3.

Protected health information is that which “identifies the individual or allows a reasonable basis to believe the information can be used to identify the individual.” 45 C.F.R. §164.501.

Covered entities include, but are not limited to, hospitals, nursing homes, HMOs, mental health and addictions facilities, pharmaceutical companies, employers, accrediting organizations, research universities, public health agencies, third-party administrators, auditors, banks, and attorneys. See Paul Knag, HIPAA: A Guide to Health Care Privacy and Security Law, Aspen Law & Business, 2002.

The consent form for the taking of a blood alcohol sample which the defendant signed, is a part of the record labeled Exhibit 1. The consent form provides, in relevant part, that at the defendant’s request, the defendant consents to “the taking from him ... of a blood sample to be used for legal purposes.” The executed consent form authorizes the hospital, agents, or employees solely to draw the sample of blood.

Purther, the defendant maintains that the taking of blood was invalid under Mass. Gen. Laws c. 90, §24(l)(e), which provides, in relevant part: “. . . if such a test or analysis was made by or at the direction of a police officer, it was made with the consent of the defendant, the results thereof were made available to him upon his request . . . and provided further, that blood shall not be withdrawn from any party for the purpose of such test or analysis except by a physician, registered nurse or certified medical technician.” In this instance, the defendant contends that the blood was drawn by a phlebotomist, that the consent form expressly provided that the Anna Jacques Hospital test or analyze the blood alcohol sample, and that the results were to have been made available to him. The evidence establishes the blood drawn *429 as the result of the defendant’s written consent was In accord with§24(l)(e), as it was drawn by Nurse Trecatin, aregistered nurse. Additionally, the consent form specifically provides solely for an employee of the hospital to draw the blood sample, and does not refer to testing or analyzing the same. See Exhibit 1. Finally, the evidence establishes that the defendant signed the consent form upon the suggestion of Officer Cena. Should the subsequent blood test be construed as having been performed at the direction of the police, the defendant would be entitled to the results upon request. The record before the court is lacking in any facts which demonstrate that the defendant made such a request.

The record is silent on what advice was given to the defendant upon his return to the police station for booking. In any case, there is no claim of a violation of G.L.c. 263, §5A.

The Office of Alcohol Testing provides a Serum Conversion Chart for use in establishing a blood alcohol level in the familiar percentage. A qualified witness converts the serum alcohol result, which is generally higher, into a blood alcohol level. Serum alcohol is expressed in milligrams/deciliter of blood. The concentration of alcohol in serum is approximately 12 times that of what is found in whole blood. By division, the analyst will convert the result to gram percent. The two results are different because serum is comprised only of the liquid portion of whole blood, thereby excluding the cellular components of the blood.

 501 C.M.R. §2.29, provides, in relevant part:
The Office of Alcohol Testing shall develop and implement a certification program for chemists of the Department of the State Police . . . who perform blood alcohol analysis under Mass. Gen. Laws c. 24, §24(l)(e) and (f) . . . The Office of Alcohol Testing shall also develop a written laboratory protocol for blood alcohol analysis under Mass. Gen. Laws c. 90, §24, (l)(e) and (f) that certified analysts must adhere to in order to conduct a valid blood alcohol analysis which may be offered as prima facie evidence under Mass. Gen. Laws c. 90, §24N.

 501 C.M.R. 2.00 was promulgated by the Secretary of Public Safety in order to cany out the directives contained in St. 1986, c. 620.

See Department of State Police, Office of Alcohol Testing, Regulations for Blood Analysts, Section 9.0 — Preservation of Samples, amended July 1, 1999.

Id. at Section 10.0.