COMMONWEALTH *vs.* ELMER L. HARMOND.

Suffolk. September 13, 1978. — November 6, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Findings by judge. *Constitutional Law,* Search and
seizure, Waiver. *Search and Seizure,* Consent.

Evidence at a hearing on a motion to suppress that after the defendant
had been arrested and handcuffed several police officers searched
his room and unlocked a small footlocker wherein they found a gun
and ammunition, that the defendant was not informed of his right
to refuse consent to the search, and that the defendant had been
drinking and was of limited intelligence was sufficient to support
a finding that the defendant did not voluntarily consent to the
search. [561–562]

INDICTMENTS found and returned in the Superior Court
on August 10, 1977.

A motion to suppress evidence was allowed by *Nelson,*
J.

An application for an interlocutory appeal was allowed
in the Supreme Judicial Court for the county of Suffolk
by *Kaplan,* J., and the appeal was reported by him.

*Mark T. Anastasi,* Special Assistant District Attorney,
for the Commonwealth.

*Stephen Hrones* for the defendant.

QUIRICO, J. This case comes before us on an interlocuto-
ry appeal by the Commonwealth from the decision of a
Superior Court judge allowing the defendant's motion to
suppress a revolver and ammunition discovered and
seized during the course of a warrantless search of the
defendant's apartment. See G. L. c. 278, § 28E. After hear-
ing oral testimony from a number of witnesses, the judge
made subsidiary findings of fact from which he concluded
that the defendant did not voluntarily consent to the

search and that it was unlawful. We hold that there was no error.

At approximately 2:30 P.M. on July 3, 1977, Boston police Officers Newman Stone and Henry Keskula went to 45 St. Botolph Street in Boston in response to a call. There they spoke with one Paul Ford, who directed them to an inner foyer on the first floor where they found the body of a person later identified as Joseph Goode (victim). Ford told the officers the following. The victim had answered a knock on the door to his apartment. Thereafter, Ford heard several gunshots. He went to investigate, found the victim's body, and saw a man ascending the stairs. Ford described the man to the officers as a black male of average height and build, in his early fifties, and wearing green work clothes.[1]

After conversing with Ford, Officers Stone and Keskula went upstairs and knocked on several doors. The defendant, who matched Ford's description, came to the door of his third-floor apartment in response and was subjected to a pat-down search by the officers. Then, while Officer Stone remained with the defendant, Officer Keskula fetched Ford from downstairs. Ford identified the defendant as the man he had seen ascending the stairs after the shooting. The officers thereupon arrested the defendant, handcuffed him, and informed him of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966).[2]

The judge further found that the following occurred after the defendant was informed of his rights. In response to a question by Officer Keskula, the defendant indicated willingness to talk about the case. The defendant denied knowledge about a gun. While the arrest and

---

[1] There was much additional testimony relative to Ford's conversation with Stone and Keskula, but the judge made no findings on the basis thereof. In any event his failure to make such findings does not affect the ruling on the motion to suppress.

[2] The defendant does not contend that the arrest was in any way illegal so as to taint the subsequent search. See *Commonwealth* v. *Boswell*, 374 Mass. 263, 270-271 (1978).

questioning were going on, several uniformed officers, some with drawn guns, were in and about the defendant's one-room apartment looking for a gun which might be in plain view. Sometime later, Detectives Edward Caruso and John Reilly arrived in the room, and all the uniformed officers then present left.

After learning that the defendant had been apprised of his rights under *Miranda*, Caruso asked him where the gun was. The defendant replied, in substance, that he had no gun but that Caruso was free to look around. Caruso conducted a visual search of the room without result. Caruso then came upon a small footlocker (trunk) at the foot of the bed. He placed it on the bed, discovered that it was locked, and asked the defendant for a key. The defendant initially denied having a key. Caruso then stated he would obtain a search warrant and break the trunk open. At this point, the defendant admitted that he had a key for the trunk among several hanging on his belt. Caruso took the key and attempted to open the trunk but had difficulty in doing so. The defendant offered to help Caruso, but Caruso eventually opened the trunk without assistance. Caruso found a .32 caliber revolver and several rounds of live ammunition in the trunk.

At no time was the defendant told that he could refuse to consent to the search of his trunk. The defendant had been drinking but he was capable of understanding the questions and advice given him by the arresting officers. According to testimony by a court psychiatrist, the defendant "was lower than average but not considerably lower than average" in intelligence.

The defendant was indicted for carrying an unlicensed firearm and for assault with intent to murder and murder. He filed a pretrial motion to suppress the revolver and ammunition found by Detective Caruso in the trunk. After a hearing, the judge found the facts which are summarized above and concluded that the defendant did not voluntarily consent to the search of the trunk. Finding no

other basis for upholding the warrantless search, the judge granted the motion to suppress. The Commonwealth applied to a single justice of this court for an interlocutory appeal under G. L. c. 278, § 28E. The single justice allowed the application and reported the case to the full court without decision.

1. We first emphasize the limited nature of our review in cases of this kind. In assessing claims of insufficient waiver of the right to silence established by *Miranda* v. *Arizona, supra,* we have repeatedly stated that we will not disturb subsidiary findings of fact made by a trial judge except for clear error. *Commonwealth* v. *Taylor,* 374 Mass. 426, 431 (1978). *Commonwealth* v. *White,* 374 Mass. 132, 137 (1977), cert. granted, 436 U.S. 925 (1978). *Commonwealth* v. *Dustin,* 373 Mass. 612, 616 (1977), cert. denied, 435 U.S. 943 (1978). The legal conclusions to be drawn from the subsidiary facts found by the judge are, however, subject to review by this court, particularly where they are of constitutional dimension. E.g., *Commonwealth* v. *Hosey,* 368 Mass. 571, 574 n.1 (1975). Although this point has been the subject of differences expressed in separate opinions in several of our cases, the basis for the different views may be related to whether we are dealing with conclusions of law or with what have sometimes been referred to as "ultimate findings" or "general conclusions" of fact based on the subsidiary facts found. In *Commonwealth* v. *Mahnke,* 368 Mass. 662 (1975), cert. denied, 425 U.S. 959 (1976), this matter was a subject of discussion in the court's opinion, *id.* at 688-691, in a dissenting opinion by Justice Kaplan, *id.* at 705-707, and in a dissenting opinion by Justice Hennessey, *id.* at 724-725. It was also the subject of discussion in the concurring opinion by Justice Hennessey in *Commonwealth* v. *Murphy,* 362 Mass. 542, 551 (1972). Because we hold that the legal conclusion reached by the judge in this case on the question whether the defendant had volun-

tarily consented to the search was legally correct, we need not pursue this point further in this opinion.[3]

2. When the Commonwealth relies on consent as the basis for a warrantless search, it must demonstrate "consent unfettered by coercion, express or implied, . . . [which is] something more then mere 'acquiescence to a claim of lawful authority' [citation omitted]." *Commonwealth* v. *Walker*, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). See *Bumper* v. *North Carolina*, 391 U.S. 543, 548-549 (1968); *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). Voluntariness of consent "is a question of fact to be determined in the circumstances of each case . . . ." *Commonwealth* v. *Aguiar*, 370 Mass. 490, 496 (1976). The neglect or failure of the police to explain the right of the defendant to refuse to consent to a search is a factor suggesting coercion, but it is not conclusive. *Commonwealth* v. *Walker, supra*. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 248-249 (1973). This is true even when a suspect is in custody when asked for permission to search. *Commonwealth* v. *LaBriola*, 370 Mass. 366, 367 (1976). *United States* v. *Watson*, 423 U.S. 411, 424-425 (1976). Similarly, it is inconclusive on the question of voluntariness that the police announced their intention to seek a search warrant if consent were not forthcoming. *Commonwealth* v. *Deeran*, 364 Mass. 193, 196 (1973). *Commonwealth* v. *Mendes*, 361 Mass. 507, 512-513 (1972). *United States* v. *Race*, 529 F.2d 12, 13-15 (1st Cir. 1976). Although the presence of several uniformed officers or the impairment of the defendant's understanding by reason of drinking may suggest the absence of consent, neither fact alone

---

[3] Nothing we have said here is inconsistent with our decision in *Commonwealth* v. *Ortiz, ante* 349 (1978). In that case we reversed the finding by a trial judge that a warrantless search of an automobile was unreasonable. *Id.* at 358. We did so, however, because the judge applied too rigid a test for the existence of exigent circumstances. *Id.* at 356-357. *Ortiz* therefore exemplifies the situation referred to in the text where we disagree with the legal conclusion to be drawn from subsidiary findings.

necessarily compels such a finding. See *United States* v. *Johnson,* 563 F.2d 936, 938-939 (8th Cir. 1977), cert. denied, 434 U.S. 1021 (1978); *People* v. *Phiefer,* 43 N.Y. 2d 719, 721 (1977). Finally, knowledge that a search will inevitably produce incriminating evidence does not automatically preclude a finding of voluntary consent. *United States* v. *Ciovacco,* 518 F.2d 29, 31 (1st Cir. 1975).

Tested by these principles, we are satisfied that in the circumstances of this case the issue of voluntariness was capable of rational resolution either way. The defendant's claim that his apparent consent was involuntary should be carefully scrutinized to avoid giving him an unfair advantage. See *United States* v. *DiPrima,* 472 F.2d 550, 551 (1st Cir. 1973). A number of factors pointing toward police coercion existed here, however. The defendant was in custody and had been guarded since his arrest by one or more police officers anxious to locate a weapon used in a homicide. He was arguably unaware of his right to refuse consent. By reason of drinking and limited intelligence he may have suffered from a reduced ability to evaluate correctly the consequences of his choice. We are unprepared to hold as matter of law that the consent given by the defendant was voluntary. Accordingly, we affirm the decision of the trial judge in granting the motion to suppress, and we remand the case to the Superior Court Department for further proceedings.

*So ordered.*