Murphy, J.
INTRODUCTION
The defendant Nuno Alves has been indicted on charges of assault with a dangerous weapon and threats to commit a crime. The defendant now moves to suppress all physical evidence and all statements made pursuant to the execution of an allegedly invalid arrest warrant and subsequent search of the defendant’s residence at 184 Perkins Avenue, Brockton, Massachusetts. The defendant further moves to suppress all statements he made to police while being questioned during the execution of the arrest warrant. For the following reasons, the defendant’s motion to suppress the physical evidence and his motion to suppress statements are ALLOWED.
FINDINGS OF FACT
This matter came before the Court for an evidentiary hearing on defendant’s motion to suppress on October 25, 2001, November 5, 2001, and November 6, 2001. At the hearing, the Court heard testimony from nine witnesses, six for the Commonwealth and three called on behalf of the defendant. From that testimony and the submissions of counsel, this Court finds the following facts.
On March 24, 2001, one Frank Avant (“Avant”) appeared in person at the Brockton Police Station to report an incident in which he was allegedly shot at by the defendant. Avant spoke with Officer Hyland and Detective Hilliard (“Det. Hilliard”). Avant stated that he was at a party at 165 Carl Avenue, Building E, Apartment 125, when he was approached and threatened by the defendant. The defendant then left the party. Avant left minutes after.
Avant stated that as he was walking between two buildings in the complex, the defendant rounded a corner and fired two shots at him. Avant indicated to the police that there were other individuals with the defendant during the shooting. Avant then observed the defendant get into a green Chrysler and speed off. Avant told the police he knew the defendant and that he owes the defendant money for unpaid drug sales. He further stated that he has recently been at the defendant’s residence and has observed numerous firearms, bullet-proof vests, and various drugs.
The defendant’s Registry information lists his vehicle as a green 1994 Chrysler Concord. A check on other reports coming into the police station around the time of the shooting revealed a call for a loud party at 165 Carl Avenue, Building E, a call for gunshots having been fired at that same location, and a call from 165 CarlAvenue, Building C, reporting a bullet having entered an apartment and lodged into a bookcase.
Upon review of the relevant information then available to the police, a decision was made by Lt. William Conlon (“Lt. Conlon”) that there was insufficient evidence to justify an application for a search warrant of the defendant’s residence. This determination was also independently made by Sgt. O’Connell when he was approached by Det. Hilliard.[1] Therefore, on March 24, 2001, Officer Hyland drafted a written application for complaint, which detailed the above facts, in order to obtain an arrest warrant.
On March 26, 2001, Officer Hyland and the police prosecutor, Sergeant John Crowley (“Sgt. Crowley"), went to the Brockton District Court in order to obtain an arrest warrant for the defendant. The complaint detailed Officer’s Hyland’s report of his interview with Avant. Assistant Clerk Magistrate Walsh (“Walsh”) reviewed the application for complaint but did not administer Sgt. Crowley an oath, nor did he sign an arrest warrant.[2] Walsh testified he does not recall whether he actually issued a warrant for the defendant’s arr.est. He did testify that after reviewing the application he believes he intended to issue the arrest warrant, but was unsure whether he had instead brought it to a supervisor for review. Walsh could not state with conviction whether anyone properly issued an arrest warrant because his initials were not on the application, as is his customary procedure.
In any event, Sgt. William Barry (“Sgt. Barry”) testified that prior to going to 184 Perkins Avenue in order to arrest the defendant, he entered the defendant’s name into the Warrant Management System (“WMS”) and obtained a computer printout of the electronic warrant from the Criminal Justice Information System (“CJIS”). The only electronic warrant the Commonwealth was able to present at the hearing shows that it was printed as of 11:20 on March 26, 2001, a time subsequent to the arrest of the defendant.
At approximately 9:30 a.m. on March 26, 2001, Sgt. Barry and Officer Williamson were conducting surveillance on the defendant’s residence in anticipation of executing the arrest warrant. They observed the defendant’s vehicle leave the residence. The vehicle was then pulled over for a broken tail light. The officer questioned the driver, one Marcelino Pires, the defendant’s step-father, who informed them that the *250 defendant was home with his mother. Marcelino Pires further stated that the other, younger, children had already left for school. A search of the vehicle revealed no criminal contraband.
At approximately, 10:30 a.m., seven officers making up the Special Reaction Team (“SRT”), along with four other officers assembled at 184 Perkins Avenue to execute the arrest warrant for the defendant. The SRT are officers dressed in black armored attire, helmets, and at least one of them has an assault rifle. One officer knocked on the door several times, announced a police presence, and when they received no answer, a battering ram was used to force entry into the home.
Immediately upon entry, the defendant’s mother was ordered to the floor and held at gunpoint. Officers Barry and Sullivan, likewise immediately upon entry, observed the defendant at the top of the cellar stairs, whereupon he was ordered to the floor at gunpoint and handcuffed. The remaining officers spread throughout the three stories of the house to secure the scene. Officer Sutherland went to the basement during this sweep of the home. He testified that while searching for other individuals who may have been armed, he looked behind the clothes dryer, where he saw a green canvas bag with the barrel of a machine gun protruding out of the partially opened zipper. Officer Sutherland then placed the bag on top of the washing machine and searched the bag for further illegal weapons.
The defendant, immediately after being forced to the floor and handcuffed, was asked by Officer Pierce where the gun was. The defendant allegedly responded that it was in the basement and that they could check. Officer Bell testified that while the defendant was later in the police cruiser, the defendant gave his consent to search his bedroom and he stated there were some drugs in there. The defendant refused to sign a waiver form at the scene or at the station.
Officer Cesarini was with the defendant’s mother after the execution of the arrest warrant in order to explain what was occurring and attempting to calm her down. The officers testified that the defendant’s mother was hysterical and crying during the execution of the arrest warrant and was unable to speak with the police for a few minutes. Nevertheless, Officer Cesarini testified that he informed the defendant’s mother that the officers had already found guns in the basement, and they had reason to believe there were drugs in the house, whereupon, according to Officer Cesarini, the defendant’s mother gave her consent to remove anything they had found and that she did not want it in her house.
The defendant’s mother signed a consent form given to her by the police.
The defendant’s mother testified, however, that the police had conducted a two-hour search without her consent, and only after the search and immediately before the police left the premises, did she sign the form. She testified that she signed the form under the assertion of the police that she needed to sign it in order for the police to remove what was already found within her house.
RULINGS OF LAW
The Fourth Amendment to the United State Constitution provides: “(t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.”
Article 14 of the Massachusetts Declaration of Rights states that “Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; . . . and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws.”
I. Validity of Arrest Warrant
G.L.c. 276, §22, entitled Warrants, Issuance of, provides that “(u]pon complaint made to any justice that a crime has been committed, he shall examine on the oath of the complainant and any witness produced by him, reduce the complaint to writing, and cause it to be subscribed by the complainant, and if it appears that a crime has been committed, shall issue a summons or warrant in compliance with the provisions of Massachusetts Rules of Criminal Procedure.” Massachusetts Rule of Criminal Procedure 6(b)(1) states, in pertinent part, that “an arrest warrant issued pursuant to this rule shall be signed by the official issuing it . . .”
G.L.c. 276, §22 and Rule 6(b)(1) explicitly provide that the justice examining the application for complaint must do so on the oath of the complainant and must sign the arrest warrant in order to have it issued. It is uncontested that the clerk Walsh failed to do either when examining the application for complaint in the present case. Therefore, the arrest warrant is invalid and cannot be used to justify the entry into the defendant’s residence.
The Commonwealth argues, however, that the failure to give an oath and to sign the arrest warrant is a “ministerial defect” which does not invalidate warrants. See Commonwealth v. Pellegrini, 405 Mass. 86, 88, cert. denied, 497 U.S. 975 (1989) (judge’s failure to sign search warrant is a ministerial defect which does not invalidate the warrant). In Pellegrini, a police officer applied to a District Court judge for a search warrant. In the presence of the judge, the officer signed the affidavits, whereupon the judge signed the affidavits attesting that the officer swore to the truth of their *251 contents before the judge. The judge then handed a search warrant to the officer stating “you have a good warrant.” The judge intended to issue the search warrant, but he failed to sign the warrant itself. Commonwealth v. Pellegrini, 405 Mass. at 88.
The Pellegrini Court held that failure to sign the warrant, where the affiant was administered an oath, the judge signed the affidavit, and the judge told the officer that he had a good warrant intending to issue it, is a ministerial defect which does not invalidate the warrant. The Court noted, however, that neither the State Constitution nor a Statute requires that a search warrant be signed. See Art. 14 of the Massachusetts Declaration of Rights; G.L.c. 276, §1-2B (statute authorizing issuance of search warrants). Therefore, the Court stated that “[i]f the Legislature wished to make the signing of [search] warrants a requirement without exception, it could have done so explicitly.” Commonwealth v. Pellegrini, 405 Mass. at 90.
Pellegrini is distinguishable from the case at bar. In the present case, there was no oath given to the complainant; rather, the clerk could not recall who presented him with the warrant application. Furthermore, the clerk neither signed nor initialed either a warrant or the complaint, but testified that it is his customary practice to initial a warrant that he issues.
Finally, there is a statute and corresponding Rule of Criminal Procedure which require an arrest warrant to be signed in order to be issued. See G.L.c. 276, §22 (justice shall issue arrest warrant in compliance with the provisions of Massachusetts Rules of Criminal Procedure); Mass.R.Crim.P., 6(b)(1) (arrest warrant issued pursuant to this rule shall be signed by the official issuing it). The clerk’s utter failure to follow the statute and rule by not administering the oath to the complainant along with the failure to sign (or initial) the arrest warrant are not the sort of ministerial errors which have been held not to invalidate search warrants. Cf. Commonwealth v. Ocasio, 434 Mass. 1, 4 (2001) (failure to return original search warrant is ministerial error); Commonwealth v. Truax, 397 Mass. 174, 181-82 (1986) (inadvertent deletion of the phrase “there is probable cause” from the warrant); Commonwealth v. Hanscom, 2 Mass.App.Ct. 840, 840 (1974) (omission of affiant’s name and date in the acknowledgment of the affidavit). Therefore, this Court rules that Commonwealth v. Pellegrini does not support the Commonwealth’s argument under the facts at bar, and the clerk’s failure to examine the complainant under oath and to sign the arrest warrant is not a ministerial error. Unless there can be some evidence of a neutral consideration having been afforded an application for an arrest warrant, there can be no certainty that the warrant did not issue by circumvention of the statutory scheme. In theory, the police could issue their own warrants, and disseminate them via the WMS. This is a danger which G.L.c. 276 is patently enacted to address, and its requirements must be adhered to by police authorities and court clerical personnel.
The Commonwealth next argues that the enactment of the WMS supersedes the requirements of G.L.c. 276, §22 and Rule 6(b)( 1) as a electronic warrant printed pursuant to the WMS constitutes a warrant and no oath nor signature is required. The WMS was enacted pursuant to G.L.c. 276, §23A. Under the statute, the issuing court’s clerk’s office is to enter the defendant’s information and the name of the police department responsible for serving the warrant into the WMS. The statute provides that, once entered, the information and name of the police department are transferred to the Criminal Justice Information Systems (“CJIS”). The information is then available to all law enforcement agencies and the Registry of Motor Vehicles via computer. The statute provides that a printout of the electronic warrant from the CJIS constitutes a true copy of the warrant.
The Commonwealth therefore argues that the electronic warrant Sgt. Barry allegedly obtained prior to the defendant’s arrest is statutorily valid under G.L.c. 276, §23A, notwithstanding the warrant was never issued upon the oath of the complainant nor signed by the issuing clerk in the first instance. The Commonwealth’s argument is unpersuasive.
“A statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language ...” Commonwealth v. Smith, 431 Mass. 417, 421 (2000). Furthermore, “the statutory language itself is the principal source of insight into the legislative purpose.” Id. Statutes must be construed so that effect is given to them as a whole, and so that no portion will be rendered superfluous. Commonwealth v. Soto, 47 Mass.App.Ct. 914, 916 (1999).
The Legislative intent in enacting G.L.c. 276, §23A was the dissemination of warrants to the appropriate authority without the necessity of hand-to-hand delivery, utilizing computer technology to expedite the warrant process and conserve police resources. The statute is not concerned with the proper procedures for the lawful issuance of warrants in the first instance. The statute assumes that a warrant has already been validly issued prior to its being entered in the WMS. It is telling to note that when enacting G.L.c. 276, §23A, the Legislature chose not to amend, repeal, or change in any way the literral requirements of G.L.c. 276, §22, and the Court sees no inherent conflict in the provisions of the two statutes. Accordingly, this Court concludes that the enactment of G.L.c. 276, §23A does not alter in any manner the requirements for the issuance of a valid arrest warrant as previously discussed.
To reiterate, any arrest warrant must be properly issued under G.L.c. 276, §22 prior to the warrant being entered into the WMS pursuant to G.L.c. 276, §23A. This conclusion is constitutionally compelled by *252 Article 14, which provides that “. . . no warrant ought to be issued but. . . with the formalities prescribed by the laws.” G.L.c. 276, §22 explicitly provides that the “justice .. . shall examine on the oath of the complainant, [and] shall issue a summons or warrant in compliance with the provisions of Massachusetts Rules of Criminal Procedure.” Massachusetts Rules of Criminal Procedure 6(b)(1) states “an arrest warrant issued pursuant to this rule shall be signed by the official issuing it . . .” Thus, Article 14 requires justices issuing warrants both to administer an oath to the applicant and to sign the arrest warrant they issue pursuant to the laws of the Commonwealth.
The Commonwealth also argues that an arrest effectuated with an invalid warrant does not render the arrest unlawful provided the arresting officers were acting on the good faith belief that a valid warrant had issued and upon independent probable cause sufficient to justify the arrest. See Commonwealth v. Fielding, 371 Mass. at 102 (arrest in public based on warrant not supported by probable cause could nevertheless be lawful if the knowledge then possessed by police amounted to probable cause); Commonwealth v. Hecox, 35 Mass.App.Ct. 277, 282-83 (1993) (good-faith exception to exclusionary rule may apply where police arrest suspect on erroneous information not of their making). The Court disagrees with the Commonwealth’s contention.
It is correct that the police may arrest an individual in public, notwithstanding an invalid arrest warrant, if they posses independent probable cause at the time of the arrest. See Commonwealth v. Fielding, 371 Mass. 97, 102 (1976); Commonwealth v. Bowlen, 351 Mass. 655, 659-60 (1967) (it is irrelevant that warrant was defective as the arresting officer need only have probable cause to believe the defendant has committed a felony when they meet face to face). This, however, is in accord with state and federal law which allows an officer to make a warrantless arrest in a public place provided the officer has probable cause to believe a felony has been committed. See United States v. Watson, 423 U.S. 423, 424 (1976); Commonwealth v. Hason, 381 Mass. 169, 173 (1982). Here the arrest was effectuated by a forced entry into the defendant’s home. Absent a valid arrest warrant or exigent circumstances, police may not enter a suspect’s home in order to make an arrest. Commonwealth v. Forde, 367 Mass. 798, 806 (1975); Commonwealth v. Midi, 46 Mass.App.Ct. 591, 594 (1999). Accordingly, it is immaterial whether the police had probable cause to arrest the defendant, because they did not have a valid arrest warrant or exigent circumstances justifying a forced entry into the defendant’s home.
Furthermore, the police officer’s good faith does not justify the entry into the defendant’s home based on an invalid arrest warrant. It is to be noted that the Supreme Judicial Court has stated that “the mere fact that an unlawful search and seizure has occurred should not automatically result in the exclusion of any illegally seized evidence.” Commonwealth v. Gomes, 408 Mass. 43, 46 (1990). In determining whether to exclude the evidence the court should examine “(1) the degree to which the violation undermined the principles underlying the governing rule of law . . . and (2) the extent to which exclusion will tend to deter such violations from being repeated in the future ...” Id. (holding a violation of the “knock and announce” rule required suppression); see also Commonwealth v. Grimshaw, 413 Mass. 73, 77 (1992) (evidence seized in violation of the law will be suppressed if the violation is substantial or rises to the level of a Federal or State constitutional violation).
In the case at bar, the Commonwealth lacked a validly issued arrest warrant due to the clerk’s failure to administer an oath to the complainant and his failure to sign the arrest warrant. This undoubtably is a substantial violation of law, and raises both State and Federal Constitutional issues. See Payton v. New York, 445 U.S. 573, 603 (1980) (Fourth Amendment requires validly issued warrant in order to enter suspect’s dwelling); Commonwealth v. Marquez, 434 Mass. 370, 374-75 (2001) (Art. 14 requires warrant or exigent circumstances before the threshold of the suspect’s dwelling maybe crossed). Thus, this Court holds that the violation in this case warrants the exclusion of evidence and the good-faith exception is inapplicable to the facts presented.
II. Execution of the Arrest Warrant
Assuming, arguendo, that the defects in the application for the arrest warrant do not render the subsequent entry into the defendant’s home unlawful, the evidence must still be suppressed as the police exceeded the permissible scope of a search conducted pursuant to the execution of an arrest warrant.
The police may conduct a cursory search of areas beyond the immediate arrest site if there are “articulable facts” that “would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.” Commonwealth v. Nova, 50 Mass.App.Ct. 633, 635 (2000), quoting, Maryland v. Buie, 495 U.S. 325, 334 (1990). This search may permissibly extend to other rooms in the dwelling in the interest of insuring the safety of the police. Commonwealth v. Bowden, 379 Mass. 472, 478 (1980).
In the case at bar, there were several articulable facts that would warrant a reasonably prudent officer in believing a “protective sweep” of the defendant’s home was necessary to insure the safety of the officers. The nature of the crime for which the police were executing the arrest warrant was a shooting at which the defendant was not alone when it occurred. Moreover, the police had information that the defendant had numerous weapons and drugs in his home — to wit — a machine gun, a hand gun, a bullet-proof vest, *253 and numerous narcotics. The police’s concern for their safety is further demonstrated by their assembling of the SRT team, which by the defendant’s own admission, is rarely utilized. Although the police obtained information from the defendant’s step-father prior to executing the arrest warrant that the defendant and his mother were the only people present in the home, the Court does not believe the police were required to accept that information as truth in the face of a reasonable concern for their safety. See Commonwealth v. Bowden, 379 Mass. at 478 (holding protective sweep of basement appropriate where crime involves weapons and officer was unaware of how many people were involved in the crime).
Nevertheless, in the case at bar, the Court rules that the police officers exceeded the scope of a permissible “protective sweep” of the defendant’s residence. The purpose of a “protective sweep” is to secure the premises of people that may launch an attack upon the police officers. Commonwealth v. Acosta, 416 Mass. 279, 282 (1993). Here, Officer Sutherland testified that he went down to the basement to sweep for people as a concern for the safety of the officers. He states that he looked behind the clothes dryer which was pulled a couple of feet way from the wall, whereupon he observed a green canvas bag with a gun barrel sticking out of the top. The space behind a washing machine, even assuming it was two feet away from the wall, is incapable of hiding an individual so as to place the officer’s safety in jeopardy. Furthermore, the Court does not credit the officers’ testimony that he was searching for people rather than evidence. Officer Sutherland’s police report states that “we executed a search warrant at 184 Perkins Ave. I searched the cellar along with Officer Mike Sullivan.” (Emphasis added.) Furthermore, Officer Súllivan’s report states that “Off. Joseph Sutherland and I searched the cellar area for weapons.” (Emphasis added.) The Court believes that the execution of the arrest warrant and alleged “protective sweep” was a clear attempt to circumvent the requirements of a valid search warrant. This is not a case in which a “protective sweep” for weapons is justified because there are known unsecured occupants in a room. See Commonwealth v. Bui, 419 Mass. 392, 395 (1995) (kicking over of mattress justified where fear of occupants in room not yet dispelled). Accordingly, the Court finds that the search in this case exceeded the lawful authority which justified its purpose.
III. Consent
When the Commonwealth relies on consent as the basis for a warrantless search, “it must demonstrate consent unfettered by coercion, express or implied . . . [which is] something more than mere acquiescence to a claim of lawful authority.” Commonwealth v. Podgurski, 44 Mass.App.Ct. 929, 930-31 (1998). Whether consent is voluntary is determined by a “totality of the circumstances” test for which the government bears the burden of proof. Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976).
In the case at bar, the defendant’s consent was involuntary. His first alleged consent was given immediately after a seven-person SWAT team broke down the door, put a gun to his head, threw him to the floor, placed him in handcuffs, and screamed at him as to where the gun was, to which he replied it is in the basement you can check. Even assuming the Court were to credit the officers’ testimony concerning the defendant’s consent, such a statement, in light of the chain of events, is not voluntarily given. See Commonwealth v. Harmond, 376 Mass. 557, 561-62 (1978) (suspect confronted by several uniformed officers suggests involuntariness due to unwarranted show of authority); United States v. Maez, 872 F.2d 1444, 1456 (10th Cir. 1989) (armed SWAT officers and the manner of arrest created a frightening scene for defendant and his family). Therefore, this Court finds that the defendant’s consent to search the basement was involuntarily given.
The Commonwealth next alleges that the defendant gave consent to search the entire house, including the upstairs bedroom, for weapons and drugs. This allegedly occurred while the defendant was in the back of the police cruiser, just prior to being brought to the police station. The officers testified, however, that they asked the defendant to sign a waiver form, which the defendant rejected. The Court does not credit the testimony of the officers that the defendant gave such a broad consent to search the entire home, but at the same time refused to sign a form doing the same. The Court holds that the defendant at no time gave consent to search the entire house.
The Commonwealth next argues that the defendant’s mother gave consent to search the entire house. Officer Cesarini testified that, after Officer Sutherland found the gun in the basement, roughly ten minutes after the entry into the house, he told the defendant’s mother that the officers had already found a gun, and she needed to consent to the search of the house so that they could remove such items. The defendant’s mother thereupon stated that she did not want anything like that in her house and she would consent to the search.
The defendant’s mother, however, testified that no officer talked to her anytime soon after the forced entry, rather after she was picked up off the floor by the officers that had ordered her down at gunpoint, she was told to sit on the couch and wait. Thereafter, the officer searched the entire house for a period of two hours. Officer Cesarini then came to her with a consent form and asked her to sign it so that the officers could remove the drugs and weapons which they had already found. The defendant’s mother signed the form under the belief that she had to in order to allow them to remove the contraband as told to her by the officer.
*254 The Court does not credit the testimony of Officer Cesarini that he obtained the defendant’s mother’s consent prior to conducting a full-scale two-hour search of the defendant’s residence.[3] Conversely, the Court credits the testimony of defendant’s mother as having been truthful.
By the officers’ own admissions, they executed an arrest warrant in order to circumvent the more stringent probable cause requirements of a search warrant. In fact, as discussed above, at least two officers indicated in their police reports that they were under the mistaken belief that they had a search warrant. Thus, the police officers were conducting a search of the defendant’s residence without a search warrant and without justification pursuant to the narrow class of exceptions allowed by law. See Commonwealth v. D’Onofrio, 396 Mass. 711, 714 (1986).
IV. Voluntariness of Statements
The Commonwealth contends that the defendant made two incriminating statements during the execution of the arrest warrant. Sgt. Barry testified that after the defendant was forced to the ground, Officer Cesarini asked the defendant where the gun was. The defendant allegedly responded that “it is in the basement.”
The Court does not credit the officers’ testimony concerning this statement made by the defendant. Officer Sutherland testified that when he went down to the basement he did so for the purpose of securing the premises from other individuals who might place the officers in jeopardy. If the defendant had, in fact, made the statement that there was a gun in the basement, Officer Sutherland would surely have testified as to his knowledge of the possibility that there was a gun therein prior to effectuating the search. Officer Sutherland in fact testified to the contrary, and to the effect that he had neither knowledge nor suspicion of anything in the basement prior to his discovery of the bag behind the washing machine. This Court believes he did not have such knowledge precisely because the statement attributed to the defendant was not made.
Furthermore, even assuming the statement were made, the statement must be suppressed as a matter of law because the Court finds that the Miranda requirements had not previously been met. See Commonwealth v. Smith, 412 Mass. 823, 829-37 (1992). Additionally, the Court holds that the alleged statement given immediately after the defendant was forced to the floor at gunpoint was not given voluntarily, and therefore must be suppressed. See Commonwealth v. Tavares, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982).
The Commonwealth also contends that the defendant stated, after he was given his Miranda warnings, that there was “some weed in his room, and that there were guns in a gym bag in the basement.” This statement was allegedly made concurrently with the defendant’s consent to search his room, but incident to his refusal to sign a consent form as discussed above. The Court does not credit the officer’s testimony concerning the alleged statement, rather the Court believes the officers “reverse-engineered” the alleged admission to be in accord with what they had already found pursuant to the illegal search of the defendant’s residence. The officers’ testimony concerning the statement was inconsistent as to what exactly was said, to whom it was said, when it was said, and as to who among them administered the defendant his Miranda rights and when they were so administered. Due to such inconsistencies, the Court cannot credit the testimony that any statement with regard to drugs in the house was given freely and voluntarily by the defendant.
In any legal context arising out of the arrest of the defendant pursuant to arrest warrant, the power of the police to search the premises ended when both occupants of the premises were subdued, a situation which obtained almost immediately after the entry by the Brockton police, and the home searched for the presence of any other persons therein present, likewise virtually immediately concluded. The next two hours of meticulous search of the premises for weapons and contraband was patently illegal.
Distilled to its essence, this case presents an effort of overzealous law enforcement knowingly seeking to utilize the power of arrest to perform an illegal search because the information given by Avant was clearly unreliable in terms of Aguilar-Spinelli requirements requisite to the obtaining of a valid search warrant of the defendant’s residence.
Such alchemy is constitutionally barred in this great democracy.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motions to suppress evidence and statements be ALLOWED.

 In fact, at least two of the police officers who testified for the Commonwealth stated that they obtained an arrest warrant in an attempt to circumvent the more rigorous requirements of a search warrant. Two police reports filed subsequent to the arrest and search state that the police “searched” the premises, even though no search warrant was ever obtained.

 Walsh testified, since the enactment of the Warrant Management System, he no longer issues “paper warrants,” and therefore there is nothing for him to sign. In addition, Walsh was unable to recall who from the Brockton Police Department presented the application for complaint to him, but he does remember reading it.

 Even assuming the Court were to credit the officer’s testimony that the consent form was signed ten minutes after the forced entry, the Court would nevertheless find that such consent was involuntary for the same reasons the defendant’s consent to search the basement was involuntary. See Commonwealth v. Harmond, 376 Mass. at 561-62. In fact, the officers testified that the defendant's mother was hysterically crying and was unable to communicate with them until, conveniently, the time when she gave her consent.