NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1248

COMMONWEALTH

vs.

CHARLES DENNING.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant, Charles Denning, of two counts of assault by means of a dangerous weapon, one count of possession of a firearm while committing or attempting to commit a felony, and one count of possession of ammunition without a firearms identification (FID) card.  On appeal, the defendant claims the motion judge erred in denying his motion to suppress the revolver, air rifle, and ammunition that police seized during a warrantless search.  In addition, the defendant asserts there was insufficient evidence to support the conviction of possession of ammunition, and therefore that conviction should be reversed.

We affirm the motion judge's denial of the defendant's motion to suppress, as well as the convictions of assault by means of a dangerous weapon and possession of a firearm while committing or attempting to commit a felony.  However, the conviction of unlawful possession of ammunition is reversed, and the verdict is set aside.

Background.  Holyoke police officer John Flynn, Detective David Seidel, and William Lloyd, the homeowner, testified at the evidentiary hearing on the defendant's motion to suppress.  We summarize the motion judge's findings of fact, supplemented by undisputed facts that are consistent with her rulings.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

On the evening of November 3, 2020, the victim, a pizza delivery driver, reported to Holyoke police that while delivering a pizza to the defendant and his fiancée, the defendant engaged in a verbal altercation with him and pointed a long-barreled revolver at him.  When the victim was delivering another pizza to a residence across the street, the defendant also pointed what appeared to be an assault rifle at him.

When Detective David Seidel responded to the first address, the defendant was standing in front of what appeared to be an "assault-style rifle," resting against the front inside

staircase about five or six feet from the glass front door.[1] The defendant came out of the house and onto the front porch and asked the police if their presence was related to the pizza delivery driver. In response, officers placed the defendant in handcuffs, and Detective Seidel entered the house without a warrant or the defendant's permission to secure the rifle. After picking up the rifle, Detective Seidel realized it was a $CO_2$-powered BB rifle (air rifle) rather than an assault weapon. When Detective Seidel first observed the air rifle, there was nothing observable about it that distinguished it from an assault-styled weapon.

Moments after Detective Seidel entered the home to secure the air rifle, William Lloyd, the homeowner and the grandfather of the defendant's fiancée, appeared in the front hallway. In response to questions from Detective Seidel, Lloyd stated that both he and his granddaughter possessed firearms, as well as "active firearm licenses." Lloyd added that he kept a gun in a safe in his bedroom, and that his granddaughter kept her gun in her bedroom. Lloyd also said that the defendant lived in the house with him and his granddaughter.

---

[1] Detective Seidel, a fifteen-year veteran of the Holyoke police, had been a department firearm instructor since 2016. Seidel also had experience with firearms as a member of the Bureau of Alcohol, Tobacco, and Firearms (ATF) task force.

When Detective Seidel told Lloyd that he wanted to see Lloyd's gun, Lloyd led Seidel and two other officers to his bedroom, where they found the safe containing his gun. After an unsuccessful attempt by Lloyd to open the safe, Lloyd provided the combination to Detective Seidel, who then opened the safe. Inside the safe was a long-barreled revolver loaded with five rounds of ammunition. The police seized the loaded revolver as well as ammunition they observed on a dresser in Lloyd's bedroom.

Lloyd's testimony differed from Detective Seidel's regarding the nature of his conversation with the police, the events that led officers up to Lloyd's bedroom, and the nature in which the safe was opened and rifle seized. However, the motion judge found Seidel's account "more convincing" than Lloyd's, and we can infer from her findings that the judge did not credit portions of Lloyd's account.

Discussion. 1. Motion to suppress. When reviewing a motion judge's denial of a motion to suppress, we "conduct an independent review" of that judge's "ultimate findings and conclusions of law." Commonwealth v. Hart, 493 Mass. 130, 135 (2023), quoting Commonwealth v. Tremblay, 480 Mass. 645, 652 (2018). Because the judge's findings of fact are "drawn partly or wholly from testimonial evidence," they are "accorded

4

deference and are not set aside unless clearly erroneous." Hart, supra, quoting Tremblay, supra at 655.  A finding is "clearly erroneous" when the reviewing court is "'left with the definite and firm conviction that a mistake has been committed' after review of all the evidence" (citation omitted).  Hart, supra.

a.  Probable cause and exigent circumstances.  The defendant first argues that the motion judge erred in finding that there was probable cause and exigency justifying Detective Seidel's warrantless entry into Lloyd's home, and therefore the physical evidence seized from the residence should have been suppressed.

A "warrantless government search of a home is presumptively unreasonable under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights."  Commonwealth v. Entwistle, 463 Mass. 205, 213 (2012), cert. denied, 568 U.S. 1129 (2013).  "Warrantless searches may be justifiable, however, if the circumstances of the search fall within an established exception to the warrant requirement" (quotation and citation omitted).  Commonwealth v. Arias, 481 Mass. 604, 610 (2019).  One of these established exceptions is (1) when a search is based on probable cause and (2) "exigent

circumstances [] make obtaining a warrant impracticable."  See
Commonwealth v. Ferreira, 481 Mass. 641, 655 (2019).

The test for probable cause is objective, see Commonwealth
v. Franco, 419 Mass. 635, 639 (1995), and it "exists where the
facts and circumstances in the arresting officer's knowledge and
of which he or she has reasonably trustworthy information are
sufficient to warrant a person of reasonable caution in
believing that an offense has been or is being committed."
Commonwealth v. Williams, 422 Mass. 111, 119 n.11 (1996).
Exigent circumstances are established when "the delay in
[obtaining a warrant] would pose a significant risk that
[either] [(1)] the suspect may flee, [(2)] evidence may be
destroyed, or [(3)] the safety of the police or others may be
endangered."  Commonwealth v. Figueroa, 468 Mass. 204, 213
(2014).

Here, the officers had probable cause to enter the
defendant's home and seize the air rifle that looked like an
assault weapon because there was ample evidence "sufficient to
warrant a person of reasonable caution in believing" that a
crime occurred, and that evidence of the crime would be found
inside the residence.  See Williams, 422 Mass. at 119 n.11.  The
responding police received a call from an identified individual,
who reported being threatened by a man with a long-barreled

6

revolver and an assault weapon. See Arias, 481 Mass. at 618, quoting Commonwealth v. Cavitt, 460 Mass. 617, 628-629 (2011) ("[w]hen assessing the reliability of [private individuals] who report apparent violations of the law, we accord more weight to the reliability of those who are identified . . . by name and address"). This allegation was bolstered when police arrived at the residence, as the defendant showed awareness of the incident by asking Detective Seidel, without being prompted, if their arrival had to do with the delivery driver. In addition, the police observed what appeared to be an assault weapon inside the front door of the house and "[w]ithin arm's reach" from the defendant. These circumstances amounted to probable cause that the defendant had recently threatened the victim with an assault weapon that was inside the home. See, e.g., Richardson v. Boston, 53 Mass. App. Ct. 201, 206-208 (2001) (concluding named victim's report of assault corroborated by other facts sufficient to establish probable cause).

In addition to probable cause, the motion judge did not err in determining that exigent circumstances were also present. Detective Seidel entered the home to seize the apparent assault weapon when it was unsecured, and the police had no knowledge of who was in the house and may have had access to it to potentially use or conceal it. Detective Seidel's entry into

7

the residence and seizure of what he believed[2] to be an assault weapon were reasonable and proportionate to the circumstances and justified as being in the interest of the police and public safety. See, e.g., Commonwealth v. Moore, 54 Mass. App. Ct. 334, 338, 340 (2002) (officer's search of duffle bag proportionate and justified by exigent circumstances including evidence of "shots fired" and potential for unknown individuals to access bag). Cf. Commonwealth v. Dejesus, 70 Mass. App. Ct. 114, 120 (2007) (finding that where "police had an objective concern for their safety . . . rooted in the articulable facts" of situation, protective sweep following arrest was justified).

The defendant argues that, should exigency have existed during Detective Seidel's initial entry into the home, any exigency dissipated when Seidel realized that what appeared to be an assault weapon was only an air rifle. We are not persuaded. The motion judge found that "Lloyd came into the front hall moments after Seidel entered" to seize the air rifle, and Detective Seidel's conversation with Lloyd began shortly after. Evaluating the scene "as it could appear to the officers at the time," Detective Seidel's continued presence in the foyer

---

[2] The motion judge credited Seidel's testimony that he believed the air rifle to be "an assault-style rifle," finding that "[n]othing observable to police suggested that the rifle was an air gun rather than a firearm."

8

to speak with Lloyd about his knowledge of potentially accessible firearms was proportionate to the circumstances. Commonwealth v. Young, 382 Mass. 448, 456 (1981).

b. Consent to search. The defendant next argues that the presence of armed officers, including Detective Seidel, created a "police-dominated" and "coercive atmosphere" that caused Lloyd to acquiesce to their authority rather than voluntarily consent to the search of his safe. This argument is unavailing.

"When the police rely on consent to justify a warrantless entry, under both the Fourth Amendment and art. 14, the prosecution 'has the burden of proving that the consent was, in fact, freely and voluntarily given.'" Commonwealth v. Rogers, 444 Mass. 234, 237 (2005), quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968). "[F]reely and voluntarily given" means "consent unfettered by coercion, express or implied, and also something more than mere 'acquiescence to a claim of lawful authority.'" Commonwealth v. Walker, 370 Mass. 548, 555 (1976), quoting Bumper, supra at 549. "Whether consent is free and voluntary is to be determined from all of the circumstances" (citation and quotation omitted). Commonwealth v. Soto-Suazo, 100 Mass. App. Ct. 460, 467 (2021).

> "While no factor by itself is conclusive, factors to
> consider include, but are not limited to:  the presence of
> armed, uniformed officers; whether the defendant was
> informed of his right to refuse consent; the age,

intelligence, and other personal characteristics of the defendant; and whether the defendant was in custody when consent was given."

Commonwealth v. Carr, 458 Mass. 295, 302 (2010).

Here, the motion judge properly found many factors supporting the validity of Lloyd's consent, including his education and military history, the nonthreatening tone of the interaction between Lloyd and the police, that Lloyd had not been arrested at the time of the search, and Lloyd's affirmative response to the request from Detective Seidel to see his gun, which included leading the officers to his bedroom and providing them with the combination to the safe.  See, e.g., Commonwealth v. Alleyne, 474 Mass. 771, 783 (2016) (defendant's "calm, cooperative" demeanor and affirmative responses to requests suggested "there was no evidence of coercion"); Commonwealth v. Sanna, 424 Mass. 92, 97-99 (1997) (concluding that "the police had properly entered the defendant's home on the consent given by the [defendant's] father"); Commonwealth v. Aguiar, 370 Mass. 490, 497 (1976) (defendant's "active assistance" in producing package containing cocaine contributed to finding of voluntariness).

The defendant unpersuasively relies on Commonwealth v. Harmond, 376 Mass. 557 (1978), to argue lack of consent.  In that case, the defendant had already been arrested by the time

10

of the warrantless search, was in custody being guarded by "one or more police officers," and appeared "arguably unaware of his right to refuse consent" due to alcohol consumption prior to his arrest and "limited intelligence." Id. at 559-562. Here, however, Lloyd had not been arrested at the time of the search, there was no evidence that he was impaired by alcohol consumption, and he was not identified as being of lower-than-average intelligence. Moreover, the presence of armed and uniformed police officers alone is not enough to indicate either express or implied coercion. See Harmond, supra at 561-562.

Although the police did not produce a written "Consent to Search" form for Lloyd's review, this did not render Lloyd's consent involuntary.[3] The motion judge found significant that, during their interaction with Lloyd, the police were "non-threatening," even cordial as they discussed matters including Lloyd's model airplane collection.

Finally, after review of the motion judge's findings, rulings, and the record, we are not persuaded by the defendant's

---

[3] Although one of the many factors to consider in the analysis, "knowledge of a right to refuse is not a prerequisite of a voluntary consent." Schneckloth v. Bustamonte, 412 U.S. 218, 234 (1973). See Sanna, 424 Mass. at 97 n.10 ("The fact that a person is not informed by the police that he has a right to refuse to consent to an entry or search is a factor to be considered on the issue of voluntariness, but is not determinative of the issue").

argument that the motion judge made any erroneous findings. To the contrary, the motion judge's subsidiary findings amply "support [her] general findings [and] conclusions based thereon." Jones-Pannell, 472 Mass. at 432, quoting Commonwealth v. Murphy, 362 Mass. 542, 547 (1972).

2. Sufficiency of the evidence. The defendant argues, and the Commonwealth concedes, that the Commonwealth did not provide sufficient evidence to support the defendant's conviction for possession of ammunition.[4] We agree.

"In reviewing a claim of insufficient evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation and citation omitted). Commonwealth v. Brown, 479 Mass. 600, 608 (2018). "To convict the defendant of unlawful possession of ammunition, the Commonwealth was required to prove that the defendant knowingly possessed ammunition that met the legal definition of ammunition." Commonwealth v. Johnson, 461 Mass. 44, 53 (2011). "[K]nowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon" such as the ability to

---

[4] Despite the Commonwealth's concession, we must independently examine the error confessed. See Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010).

12

"discern merely by observation whether [a firearm] . . . was loaded" (quotation and citation omitted).  Brown,479 Mass. at 608.

Because the defendant did not object to the sufficiency of evidence for the unlawful possession of ammunition conviction, we review for whether any potential error resulted in a "substantial risk of a miscarriage of justice." Commonwealth v. Azar, 435 Mass. 675, 685 (2002).  An error creates a substantial risk of a miscarriage of justice if, after review, we determine there is "a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Desiderio, 491 Mass. 809, 810 (2023).  "[C]onvictions based on insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice" (quotation and citation omitted).  Commonwealth v. Heywood, 484 Mass. 43, 49 n.7 (2020).

At trial, the victim testified, in summary, that the defendant pointed a "long-barreled revolver" and what looked like an assault weapon at him.  In addition, police witnesses testified that they recovered a "long barreled revolver," as well as five rounds of ammunition from inside the revolver's

13

cylinder, from a safe in Lloyd's bedroom.[5]  While this evidence supports the defendant's convictions for assaults with dangerous weapons (a handgun and "BB gun" as charged in the indictments) and possessing a firearm while committing a felony, the Commonwealth did not prove that the defendant knew the revolver was loaded when he possessed it.  Notably, neither of the police witnesses who testified to taking part in recovering the revolver testified as to whether the ammunition was visible while inside the revolver's cylinder, or opined whether a person would have been able to determine if the revolver was loaded merely by holding the revolver.  Nor did the victim testify that he could discern the revolver was loaded.

Additionally, as conceded by the Commonwealth, the photographic exhibits of the revolver introduced to the jury do not reveal whether one could have seen the absence or presence of ammunition while handling the revolver without opening the cylinder.[6]

---

[5] The Commonwealth's theory at trial was that the ammunition the defendant possessed was what was inside the revolver.  In those circumstances, we confine our analysis to that ammunition.

[6] Only one photographic exhibit (Trial Exhibit 7) of the revolver was sufficiently clear for our review in the record on appeal.  This exhibit is not illustrative of whether ammunition would have been visible to one holding the revolver.

14

Therefore, the Commonwealth did not present sufficient evidence from which a juror could infer, beyond a reasonable doubt, that the defendant was aware that the revolver was loaded. See Commonwealth v. Brown, 91 Mass. App. Ct. 286, 287, 293 (2017) (vacating defendant's conviction where there "was no basis on which a rational juror could conclude beyond a reasonable doubt that the defendant knew the gun was loaded"). See also Commonwealth v. Ashford, 486 Mass. 450, 455 (2020) (in concluding evidence was insufficient to establish defendant knew firearm was loaded, court emphasized facts that "the gun was not discovered on the defendant's person, and one cannot tell whether the firearm was loaded simply by looking at it"); Commonwealth v. Galarza, 93 Mass. App. Ct. 740, 748 (2018) (concluding evidence not sufficient to support conviction of unlawful possession of loaded firearm because one could not discern from looking at firearm that it was loaded). Accordingly, the conviction for possession of ammunition without a firearms identification card must be reversed and the verdict set aside.[7]

---

[7] Because we conclude that the defendant's conviction of possession of ammunition without an FID card must be reversed due to insufficient evidence, we need not reach the remaining claims raised on appeal for this charge.

Conclusion.  The order denying the defendant's motion to suppress is affirmed.  The judgment as to the defendant's conviction of unlawful possession of ammunition is reversed; the verdict is set aside; and the judgment on this count shall enter for the defendant.  The judgments as to the convictions of two counts of assault by means of a dangerous weapon and one count of possession of a firearm while committing or attempting to commit a felony are affirmed.  The matter is remanded for any further proceedings consistent with the decision.

So ordered.

By the Court (Shin, Grant & Smyth, JJ.[8]),

Clerk

Entered:  September 8, 2025.

---

[8] The panelists are listed in order of seniority.